(No. 17775.—Judgment affirmed.)
THE ILLINOIS-INDIANA FAIR ASSOCIATION, Appellant, *vs.*
GEORGE A. PHILLIPS, Appellee.

*Opinion filed December 21, 1927—Rehearing denied Feb. 9, 1928.*

1. APPEALS AND ERRORS—*when the Appellate Court's findings of fact are binding on Supreme Court.* Affirmation by the Appellate Court of a judgment in a suit at law precludes the Supreme Court from an examination of the record except to ascertain whether the law has been properly applied by the trial and Appellate Courts to the facts before them, and to determine whether, if the record discloses error, the judgment ought to be reversed.

2. SALES—*contract for sale of corporate stock is within Statute of Frauds.* In the absence of any qualifying or restricting clause the phrase "goods, wares and merchandise," in the Statute of Frauds, includes and comprehends shares of the capital stock of incorporated companies which are the subject of common barter and sale and which are given visible and palpable form by means of certificates, as there is nothing in the nature of shares of stock which should exempt contracts for their sale from the reasonable restrictions designed by the statute to prevent fraud in the sale of other commodities.

3. CORPORATIONS—*the distinction between potential and actual stock of corporation.* Potential stock of a corporation is merely

the power, under the charter or governing statute, to acquire capital stock, and authorized capital stock has no existence or validity until it is actually subscribed for or issued, but when subscribed for so as to legally bind the subscriber whose obligation is accepted by the corporation, or when it is paid in, it becomes actual stock regardless of whether a stock certificate is drawn up and delivered, as the certificate is merely the written evidence of the facts and expresses the contract between the shareholder and corporation.

4. SAME—*what constitutes purchase of actual stock of corporation—Uniform Sales act.*  Where an increase in the capital stock of a corporation has been authorized and subscriptions for all the stock have been received and accepted, a party who subsequently gives his promissory note for a certain number of shares of the stock becomes a purchaser of actual stock and is not a mere subscriber for unissued stock, notwithstanding he had, before the stock was issued, signed an agreement, with others, to underwrite the new issue, and where more than $500 worth of stock is so purchased, section 4 of the Uniform Sales act may be invoked as a statute of frauds in defense of a suit on the note; and the giving of the note will not constitute payment in whole or in part, within the meaning of the statute, unless it is so accepted.

5. BILLS AND NOTES—*note is not payment of an obligation unless accepted with that intention.*  A note may be given and accepted in payment of an obligation, but the intention that it shall so operate must be made manifest in the transaction.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding.

CHARLES TROUP, for appellant.

HAROLD F. LINDLEY, and O. B. DOBBINS, for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Illinois-Indiana Fair Association, a corporation, instituted a suit in assumpsit upon a promissory note against George A. Phillips in the circuit court of Vermilion county. A jury was waived and the cause was tried by the court. The issues were found for the defendant and judgment was

328—24

rendered against the plaintiff in bar of the action and for costs. The plaintiff prosecuted an appeal to the Appellate Court for the Third District, and that court affirmed the circuit court's judgment. Upon a certificate of importance granted by the Appellate Court the plaintiff prosecutes a further appeal to this court.

On April 4, 1917, the Eastern Illinois Fair Association was incorporated in this State for the purpose, among others, of exhibiting livestock and agricultural and horticultural products. Its original capital stock was fixed at $2500, and consisted of one hundred shares of the par value of $25 each. On May 19 of the same year the name of the corporation was changed to the Illinois-Indiana Fair Association and its capital stock was increased to $75,000. Thereafter the corporation incurred a considerable indebtedness for the construction of race tracks, buildings and other improvements and in the conduct of the fair, and certain of its officers endorsed its notes and became liable thereon to the extent of $100,000. To discharge this indebtedness and to supply the corporation with additional funds a plan was devised early in 1919 whereby one hundred and thirty-five citizens of the city of Danville and vicinity, in Vermilion county, should underwrite capital stock of the corporation of the par value of $135,000. In March and April, 1919, an agreement was signed by that number of persons whereby each of them agreed with the others (*a*) that the subscribers underwrite the sale of $135,000 of the capital stock of the corporation; (*b*) that the stock to be sold consist of the corporation's unsold capital stock together with the necessary increase of such stock, and that the subscribers waive notice of the stockholders' and directors' meetings necessary to effect such increase; (*c*) that each subscriber join with the association and any others, assisted by the Chamber of Commerce of Danville, in a campaign to last at least thirty days, to sell $135,000 of the capital stock of the association; that after the con-

clusion of the campaign the unsold portion of such stock, if any, be purchased by the subscribers, each to purchase and pay for his *pro rata* share, only, of such residue at the rate of $25 per share, and that in no event shall any subscriber be required to purchase more than forty shares of the stock; and (*d*) that in case the subscribers be required to purchase any stock they shall have the right to pay for it at the rate of $200 per year by giving their notes, bearing interest at six per cent per annum from the date of purchase. Pursuant to the agreement the association held a special meeting of its stockholders on May 31, 1919, and increased its capital stock to $200,000 and the number of shares of stock to 8000. On July 3, 1919, application was made to the Secretary of State for permission to sell 5761 shares of the stock, having a par value of $144,025, and permission was granted. The campaign for the sale of the stock began on July 14, 1919, and representatives of the Chamber of Commerce of the city of Danville, as well as officers of appellant, took part in the campaign. The underwriters were divided into committees, each of which had a captain, and appellee was a member of one of these committees. To arouse enthusiasm meetings were held and luncheons were given. The active campaign, however, lasted only four days and met with little success, for only $13,500 of stock was sold, and of this total the sales made by appellee's committee aggregated from $4400 to $4600.

On October 21, 1919, appellee executed his promissory note for $1000, payable to the order of appellant in annual installments of $200 each, the first maturing on November 1, 1920, with interest on the principal remaining unpaid at six per cent per annum, payable annually. The note made provision for a reasonable attorney's fee, to be added to the principal in case of a default in making payment. Concerning the execution of the note, John G. Hartshorn and George M. McCray, the vice-president and secretary, respectively, of appellant, testified that they called

on appellee and told him that the campaign for the sale of the stock had ended; that $13,500 of stock had been sold and that he would be entitled to a credit of $100; that a number of the underwriters were not able to carry as much as $1000, and, since he was interested in the fair and was financially able to do so, they would like to have him take forty shares in order that they might to some extent reduce the subscriptions of certain underwriters, and that appellee thereupon, without hesitation, signed the note. Appellee's version of this meeting was, that when Hartshorn and McCray requested him to sign the note he asked them about the credit for the stock that had been sold and was to be apportioned; that they said the note was part of the agreement and that the apportionment of the stock would be adjusted later, and that upon receiving this assurance he signed the note. No certificate of stock was delivered to appellee at the time. Subsequently, in December, 1919, appellee brought appellant additional stock subscriptions aggregating $325. Upon a portion of these subscriptions he delivered $50 in money, a Liberty bond for $50 and a note of Paul Atherton for $25. Four shares of stock were issued directly to the subscribers who paid the money and delivered the Liberty bond. Later, when Atherton paid his note a share of stock was issued to him. Shortly after May 4, 1925, Stanley Mires, the assistant cashier of the Palmer National Bank at Danville and acting treasurer of the fair association, presented the note to appellee for payment, claiming a balance of $875, with interest from November 1, 1919, due thereon. Mires at the same time tendered to appellee a certificate for thirty-five shares of appellant's capital stock. Appellee refused to pay the note and declined to accept the stock certificate. The instant suit followed.

Appellee filed various pleas to appellant's declaration. The fifth plea averred that appellee on August 1, 1919, procured and delivered to appellant subscriptions for its stock

amounting to $1000; that these subscriptions were accepted by appellant in performance of appellee's underwriting agreement, and that the note was thereby fully satisfied and discharged. To this plea appellant replied doubly: First, by denying that appellee had procured and delivered to appellant subscriptions which were accepted by it in satisfaction of the underwriting agreement and note; and secondly, by averring that after the campaign for the sale of the stock was ended, appellee, with full knowledge of the facts, bought from appellant forty shares of its capital stock and gave his promissory note in payment thereof. Appellee, by rejoinders to this replication, pleaded the Statute of Frauds and that he never purchased the shares of stock. To the first rejoinder appellant by a sur-rejoinder pleaded that appellee accepted and actually received part of the goods or choses in action contracted to be sold or sold; that he gave something in earnest to bind the contract or in part payment, and that a note or memorandum in writing of the contract or sale was signed by appellee. Issue was taken upon appellee's second rejoinder and upon appellant's sur-rejoinder.

The circuit court found that appellee gave the note in question not under or pursuant to a prior contract but by virtue of an independent agreement to buy forty shares of appellant's stock at $25 per share. This finding accords with the averments of appellant's second replication to the fifth plea. The trial court further found that the evidence failed to show that appellee had paid a portion of the purchase price of the stock for which the note was given or that he had accepted any of the stock, and that the transaction was within the Statute of Frauds. These findings of fact were approved by the Appellate Court and are binding upon this court. Affirmation by the Appellate Court of a judgment in a suit at law precludes this court from an examination of the record except to ascertain whether the law has been properly applied by the trial and Appellate

Courts to the facts before them, and to determine whether, if the record discloses error, the judgment ought to be reversed. *Pridmore v. Chicago, Rock Island and Pacific Railway Co.* 275 Ill. 386; *Graham v. Hagmann,* 270 id. 252; *Reiter v. Standard Scale Co.* 237 id. 374.

The decisive question for determination on this appeal is whether appellee's purchase of forty shares of appellant's capital stock on October 21, 1919, was within the first paragraph of section 4 of the Uniform Sales act, (Cahill's Stat. 1927, p. 2227; Smith's Stat. 1927, p. 2431;) effective July 1, 1915, which provides: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

The doctrine that a contract for the sale of corporate stock is one for the sale of "goods, wares and merchandise" within the Statute of Frauds is almost unanimously recognized by the courts of this country. (*Mayer v. Child,* 47 Cal. 142; *North v. Forest,* 15 Conn. 400; *Ayres v. French,* 41 id. 142; *Pray v. Mitchell,* 60 Me. 430; *Tisdale v. Harris,* 20 Pick. 9; *Eastern Railroad Co. v. Benedict,* 10 Gray, 212; *Boardman v. Cutter,* 128 Mass. 388; *Meehan v. Sharp,* 151 id. 564; *Baltzen v. Nicolay,* 53 N. Y. 467; *Raymond v. Colton,* 43 C. C. A. 501; *Koewing v. Wilder,* 63 id. 186; *Davis Laundry Co. v. Whitmore,* 92 Ohio St. 44; *Sprague v. Hosie,* 155 Mich. 30; *Hewson v. Peterman Manf. Co.* 76 Wash. 600; *Spencer v. McGuffin,* 130 N. E. (Ind.) 407; *Snow Storm Mining Co. v. Johnson,* 108 C. C. A. 615; *Russell v. Betts,* 107 Ark. 629; *DeNunzio v. DeNunzio,* 90 Conn. 342; *Stifft v. Stiewel,* 91 Ark. 445; *Korrer v. Madden,* 152 Wis. 646.) There

is nothing in the nature of shares of corporate stocks which should exempt contracts for their sale from the reasonable restrictions designed by the statute to prevent frauds in the sale of other commodities. (*Tisdale* v. *Harris, supra; North* v. *Forest, supra.*) A broad, rather than a narrow, meaning should be given to the word "goods." That contracts for the sale and delivery of shares of stock are subject to the mischief aimed at by the statute is obvious. (*Sprague* v. *Hosie, supra.*) In the absence of any qualifying or restricting clause, the phrase "goods, wares and merchandise" includes and comprehends shares of the capital stock of incorporated companies which are the subject of common barter and sale and which are given visible and palpable form by means of certificates. *Banta* v. *City of Chicago,* 172 Ill. 204; *Tisdale* v. *Harris, supra; Somerby* v. *Buntin,* 118 Mass. 279.

Appellant, however, insists that while the shares of stock bought by appellee were authorized, yet they were merely potential and unissued shares bought from the corporation itself and did not constitute actual shares, and for these reasons were not included within the first paragraph of section 4 of the Uniform Sales act. Potential stock is merely the power under the charter or governing statute to acquire a capital stock. Capital stock which is merely authorized has no existence or validity until it is actually subscribed for or issued. Actual stock is that stock which has been subscribed for and which either has been paid in or is subject, under legal compulsion, to be so paid. If capital stock has been subscribed for or issued it is actual and valid stock although actual payment for it may not have been made. (*Sturges* v. *Stetson,* 1 Biss. 246; 14 Corpus Juris, 383.) The certificate of the corporation for the share or the stock certificate is not necessary to the existence of the shares or their ownership. It is merely the written evidence of those facts. It expresses the contract between the shareholder and the corporation and his co-

shareholders. But it is the payment, or the obligation to pay, for shares of stock, accepted by the corporation, that creates both the shares and their ownership. *United States Radiator Corp.* v. *New York,* 208 N. Y. 144; *Burrall* v. *Bushwick Railroad Co.* 75 id. 211; *Christensen* v. *Eno,* 106 id. 97; *Southworth* v. *Morgan,* 205 id. 293; *Buffalo and New York City Railroad Co.* v. *Dudley,* 14 id. 336; *Dayton* v. *Borst,* 31 id. 435; *Flour City Nat. Bank* v. *Shire,* 179 id. 587.

Subscriptions had been received for all of appellant's stock prior to May 1, 1919. The campaign for the sale of the stock carried on by the subscribers, assisted by other persons, followed in July of the same year. After that campaign had ended, according to appellant's second replication to the fifth plea, appellee, with full knowledge of the facts, bought forty shares of stock and gave his note in payment. This purchase was made on October 21, 1919, long after subscriptions for all the stock, including appellee's, had been received and accepted. The instant suit is upon the note so given and not upon appellee's prior stock subscription. It follows that appellee's purchase on October 21, 1919, out of which this suit arose, could not have been a subscription for unissued stock. Under the pleadings and the evidence the stock which appellant sold and appellee bought on that day was existing and issued stock. Nor did the giving of appellee's promissory note of itself constitute payment, either in whole or in part, of the purchase price within the meaning of the Statute of Frauds. (*Krohn* v. *Bantz,* 68 Ind. 277; 27 Corpus Juris, 255.) A note may be given and accepted in payment of an obligation, but the intention that it shall so operate must be made manifest in the transaction. (*Baker* v. *Salzenstein,* 314 Ill. 226.) There is no evidence to that effect in this case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*