**EMPIRE PETROLEUM COMPANY,**
Appellant,

v.

**SINCLAIR PIPELINE COMPANY,**
Appellee.

**SINCLAIR PIPELINE COMPANY,**
Cross-Appellant,

v.

**EMPIRE PETROLEUM COMPANY,**
Cross-Appellee.

Nos. 6255, 6256.

United States Court of Appeals
Tenth Circuit.

Aug. 23, 1960.

Anthony F. Zarlengo and Fred M. Winner, Denver, Colo. (William R. Loeffler, Denver, Colo., was with them on the brief), for appellant and cross-appellee.

Robert A. Dick of Akolt, Turnquist, Shepherd & Dick, Denver, Colo. (Frank Thompson, Independence, Kan., was with him on the brief), for appellee and cross-appellant.

Before BRATTON, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

As plaintiff below, Sinclair Pipeline Company, a common carrier engaged in the interstate transportation of oil, instituted this action against Empire Petroleum Company by complaint alleging five separate claims originating against Wisconsin Oil Refining Company and becoming the obligations of Empire through merger of that company with Wisconsin. The trial court gave judgment for Sinclair upon the first three claims alleged and to Empire upon the fourth and fifth claims asserted. From such judgment the respective parties present this appeal and cross-appeal. We first consider the contentions of Empire that the trial court erred in awarding Sinclair judgment upon the first three claims.

Sinclair's first two causes of action are premised upon a claim for transportation charges for two separate 50,-000 barrel shipments of oil through pipeline from Colorado to Monee, Illinois. The subject oil originated in the Little Beaver Field, Washington County, Colorado. It was gathered through the facilities of Goodall Pipeline Company, a common carrier limited to intrastate service in Colorado, and piped by Goodall to Merino, Colorado. The oil was then transferred to the pipeline of the Arapahoe Pipeline Company for movement to Humboldt, Kansas, at which point it entered the Sinclair lines for delivery at Monee, Illinois.

Original negotiations for these oil shipments were made with Sinclair by Marson Crude Oil Company, a marketing company dealing in crude oil. Marmaduke, representing Marson, approached one Carter, then in charge of the oil movement department of Sinclair, and represented himself as a purchaser of crude oil. Carter testified that Marmaduke "was wanting to move the crude from the Denver-Julesburg Area to the Chicago Area, and stated to me that it was to be transshipped from that area to Sheboygan, Wis., for the account of Wisconsin Oil and Refining Company." The tenders of shipment actually made reflect the same understanding. The tenders recite that Marson was the shipper and delivery was to be made to Wisconsin at Monee, Illinois. Delivery tickets made by Goodall show delivery of oil at Merino Station, Colorado, to Marson for account of Wisconsin. The delivery tickets of Sinclair at Monee disclose on their face that delivery was to be made at Monee, Illinois, to Marson. Actual delivery was made at Monee into tank facilities leased by Marson from Sinclair but receipted for by employees conflictingly described as employees of Wisconsin and employees of the Mar Nel Corporation, the latter being co-owned by Marmaduke and officers of Wisconsin. The oil was ultimately shipped by rail to Wisconsin under bills of lading showing Marson as consignor and Wisconsin as consignee.

Full payment of all charges for the oil was made by Wisconsin to Marson. Sinclair billed Marson for the transportation charges but was not paid. Instead, Sinclair took the promissory note of the Marson Company and Marmaduke and his wife, the note providing that Sinclair "does herewith cancel said indebtedness of Marson Crude Oil Company upon said items of account. * * *" The note was past due and unpaid at the time the instant action was instigated.

The contractual relation between Marson and Wisconsin was set forth in an oil purchase agreement entered into by those parties and the Denver Basin Oil Co. of Brush, Colorado, the seller of the oil. This contract designated Wisconsin as the buyer and Marson as the transporter and provided, among other things, that:

"All Crude oil bought and sold under the terms of this agreement shall be delivered by Seller to Buyer through the Transporter via the pipeline of Goodall Pipeline Company at the tanks of Seller located on the above described leasehold interest, and Buyer shall pay all transportation, storage, and all other costs necessary from and after for the delivery in and to the gathering

lines of the Goodall Pipeline Company."

■ This factual narration summarizes the principal evidentiary support for the trial court's critical finding and conclusion that Wisconsin was both the consignee and owner of the subject oil during the period of transportation. Such finding is not clearly erroneous and will not be disturbed on appeal. And although it is apparent that during the entire course of dealing Sinclair made no demand upon Wisconsin for costs of transportation [1] and looked exclusively to Marson even to the extent of taking a promissory note in purported cancellation of the transportation charges, still such conduct will not operate in law to estop Sinclair from asserting its delayed claim against Wisconsin or relieve that company from its liability to pay the cost of transportation of oil consigned to it. And this remains true even though Wisconsin has completely settled its account with Marson. The compulsion of the Interstate Commerce Act is such that the intricacies of private contract cannot be permitted to result in rate discrimination, actual or potential. This rule is necessary to prevent collusionary discrimination between shipper and carrier and results in the consignee being liable for transportation costs as a matter of law upon his acceptance of the goods from the carrier and regardless of any consignor-consignee contract to the contrary. Pittsburgh, C. C. & St. L. R. Co. v. Fink, 250 U.S. 577, 581, 40 S.Ct. 27, 63 L.Ed. 1151; Werner Transp. Co. v. Shimon, 249 Wis. 87, 23 N.W.2d 519; Western & Atlantic R. Co. et al. v. Underwood, D.C.Ga., 281 F. 891. Nor will any act or omission of the carrier estop or preclude it from enforcing payment of the full amount under the tariff by a person liable therefor, Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., 10 Cir., 193 F.2d 441, 444; New York Cent. R. Co. v. Frank H. Buck Co., 2 Cal.2d 384, 41 P.2d 547. The trial court was correct in awarding plaintiff judgment upon the first two claims.

■ Sinclair's third cause of action is based upon a delivery made by them from surplus of 5200 barrels of oil to Wisconsin and upon that company's request after Sinclair had first obtained the approval of Marmaduke. It is admitted that Wisconsin ordered the delivery of the oil, accepted it, and has not paid for it. The contention is made that the failure to join Marson and the partners Marmaduke as indispensable parties requires dismissal of the cause. Although Sinclair originally billed Marson for this over-delivery and Marson billed Wisconsin the record does not indicate that anyone except Sinclair makes a present claim for the value of the oil against Wisconsin. To the contrary, Marmaduke testified by deposition that he did not make any claim for payment for the oil. The record thus supports the trial court's finding that no person or company (other than Sinclair) claims a right to payment for the oil and requires affirmance of this portion of the judgment.

Sinclair's cross-appeal complains of the trial court's refusal to award relief upon the fourth and fifth causes of action asserted in the complaint. The fourth cause alleged states that Sinclair had become the owner, presumably by assignment, of the unpaid transportation charges due Goodall for the shipment of the subject oil from the producing fields to the terminal point of the Arapahoe pipeline. These charges were made for services entirely intrastate in scope and consequently not subject to the compulsion of the Interstate Commerce Act. The trial court, noting the inapplicability of the Act, held that the indebtedness originally due Goodall had been settled and canceled by Goodall's acceptance of a promissory note from Marson. Again, as with the Sinclair notes, such promissory note specifically states that the original debt is canceled by the promise

---

1. The testimony indicated that Sinclair did not know of the existence of the Denver-Marson-Wisconsin contract until after the instant action was filed.

to pay in accordance with the provision of the note.

Since the services rendered by Goodall were entirely intrastate it is true, of course, that the provisions of the Interstate Commerce Act and the decisions interpreting the Act are not controlling in the determination of the merit of this cause. We believe, however, that the reasoning of the cases cited in our consideration of the first two causes of action is equally applicable to Sinclair's rights as the assignee of Goodall and that the trial court was in error in not allowing recovery upon this aspect of the case. Goodall is a public utility operating by and under the authority of the State of Colorado and the regulation of the Colorado Public Utilities Commission. As such, it cannot engage in direct rate discrimination nor grant any preference or advantage to any person. 115–3–6, Colo.Rev.Stat.1953. Although we can find no decision of the Colorado Supreme Court upon the question we believe a reasonable interpretation of the state utility law would require such utility to charge and collect the full established charge for transportation of the subject oil from any person liable for the charge and would prevent the utility from canceling the original charge in consideration of a new and different promise to pay. Since Sinclair takes by assignment it can neither improve nor lose the rights of its assignor in this regard.

Sinclair's fifth and final claim involves certain unpaid rentals incurred through the lease of tank facilities and other costs incurred at Monee, Illinois, pursuant to an agreement made by Sinclair with Marson. The tanks were used to store the oil prior to final delivery to the facilities of Wisconsin. Here, again the trial court found that Sinclair, by the acceptance of a promissory note from Marson, had taken the note in lieu of the original debt and that by so doing had discharged the pre-existing debt. The language of the note supports this fact finding and since this is not a charge controlled by statute, we think the lower court to have been correct in its judgment. Lomax v. Colorado Nat. Bank, 46 Colo. 229, 237, 104 P. 85; Baker et al. v. Salzenstein et al., 314 Ill. 226, 145 N.E. 355; Illinois-Indiana Fair Ass'n v. Phillips, 328 Ill. 368, 159 N.E. 815, 59 A.L.R. 591. Sinclair's contention that Marson was acting as an agent for an undisclosed principal (Wisconsin) is without merit for although the trial court found that Sinclair was unaware of the "true relationship of Marson Crude Oil Company with defendant (Wisconsin) * * * until discovery of the Oil Purchase Agreement * * *" still Sinclair was well aware that Wisconsin was the consignee of the oil and had been informed that the oil was purchased and shipped for the Wisconsin account.

The judgment is affirmed as to the first, second, third and fifth causes of action; the judgment is reversed as to the fourth cause of action with instructions to vacate the judgment of dismissal and to enter judgment for Sinclair in accordance with the views herein expressed.