UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company (Overseas) Limited, Defendants.

Crim. No. 91–0655 (JHG).

United States District Court, District of Columbia.

Jan. 8, 1993.

Sol Neil Corbin, Marc T. Gottridge, Kelly D. Talcott, Corbin, Silverman & Sanseverino, New York City, for court-appointed Trustee.

Jean V. MacHarg, James R. Stuart, Rose E. Kriger, Patton, Boggs & Blow, Washington, DC, for Patton, Boggs & Blow.

### ORDER DENYING TRUSTEE'S MOTION TO COMPEL PRODUCTION OF STOCK CERTIFICATE

JOYCE HENS GREEN, District Judge.

Presently pending before the Court is a motion filed by court-appointed trustee Harry W. Albright, Jr. ("Trustee") for the production by the law firm of Patton, Boggs & Blow ("PBB") of all stock certificates (and instruments of transfer) representing shares

of capital stock of First American Corporation ("FAC"). An opposition to the motion, a reply, and a surreply have been filed. Upon consideration of the motion and all filings relating thereto, the Trustee's motion to compel is denied and PBB is directed to deliver possession of the FAC stock certificate to the Court.

## BACKGROUND

On May 29, 1992, the United States of America, the court-appointed fiduciaries for the four corporate defendants, the District Attorney for New York County, and the Board of Governors of the Federal Reserve System filed a joint motion and a proposed Order for the appointment of a trustee to effect the sale or other disposition of all shares of stock in FAC or its assets, including First American Bankshares, Inc. ("FAB") and FAB's subsidiaries. FAC was wholly-owned by a Netherlands corporation named Credit and Commerce American Investments, B.V. ("CCAI"), which, in turn, was wholly-owned by Credit and Commerce American Holdings N.V. ("CCAH"), a Netherlands Antilles corporation. Because Netherlands Antilles law required authorization of at least 75% of CCAH shareholders before the FAC shares could be transferred to a court-appointed trustee, *see* Transcript of Motion Hearing, June 16, 1992, at 20–21, the proposed Order and the joint motion for appointment of a trustee had been submitted to the CCAH shareholders for their review and approval prior to being filed with this Court. Over 79% of the CCAH shareholders voted in favor of submitting the proposed Order to the Court. *See Id.* at 21; Exhibit D to Affidavit in Support of the Trustee's Motion to Compel Patton, Boggs & Blow to Turn Over to the Trustee All Shares of First American Corporation in Their Possession ("Corbin Affidavit"), filed September 2, 1992.

After considering the joint motion and representations made at the hearing held June 16, 1992, the Court determined that the appointment of a trustee was necessary to execute the portion of the Court's January 24, 1992 Order of Forfeiture condemning "the net proceeds from the future sale or other disposition or transfer of any stock, security or other interest in First American Bankshares, Inc., but not the stock, security or other interest itself."[1] In addition, the Court concluded that the appointment of a trustee was necessary to enable the four corporate defendants to comply with their obligation under the Plea Agreement, filed with this Court on December 19, 1991, to divest themselves of any interest they held in CCAH. Consequently, and in accordance with 18 U.S.C. § 1963(e), the Court issued a written Order on June 23, 1992 appointing Harry W. Albright, Jr. as Trustee of FAC.

The Order Appointing Trustee was, in all material respects, the same as the proposed Order submitted by the joint movants and stated in relevant part:

The Trustee shall collect and hold, subject to any existing lien, all the issued and outstanding shares of FAC, and shall sell or otherwise dispose of all assets owned or controlled directly or indirectly by FAC at any given time, including, without limitation, all of the issued and outstanding capital stock of FAB or of the FAB subsidiaries, consistent with the purposes of this Order . . . .

Order Appointing Trustee at 3. In addition, the Order provided:

The Trustee shall exercise all rights, titles, powers, and privileges of a shareholder of FAC, including, to the extent permitted by applicable law of the state of incorporation of the relevant corporation, the right to exercise exclusively any and all voting rights and other rights or benefits attached to, derived from, or otherwise attributable to the FAC shares . . . .

*Id.* at 3–4.

Prior to the Trustee's appointment, a client of PBB, H.H. Sheikh Zayed bin Sultan Al Nahyan acting through the Chairman of his Department of Private Affairs ("Client")[2], acquired and extended the maturity date of a $50 million loan previously made by Banque

---

1. Order of Forfeiture entered January 24, 1992 at 2.

2. The Client is also a CCAH shareholder and approved of the proposed Order and the appointment of an FAC trustee.

Arabe et Internationale D'Investissement ("BAII") and others to FAC. Pursuant to the acquisition of the loan, the Client obtained a perfected security interest in all FAC shares.[3] To maintain the perfected security interest, PBB, as bailee for the Client, has held and continues to hold in its physical possession an FAC stock certificate which represents 100% of the issued and outstanding FAC shares. As of March, 1992, the outstanding balance of the loan was approximately $9.7 million. *See* Opposition to the Trustee's Motion to Compel Patton, Boggs & Blow to Turn Over to the Trustee the First American Corporation Stock Certificate in its Possession ("Opposition"), filed September 30, 1992, at 5.

One day after the appointment of the Trustee, the sole director of CCAI, Jack W. Beddow, sent a letter to the Trustee which stated, "By this letter, I am transferring control over the FAC stock to you pursuant to past communications with the shareholders of Credit and Commerce American Holdings, N.V. and the June 23 Order." Exhibit H to Corbin Affidavit. About that time, FAC registered the transfer of shares in the name of the Trustee and recorded the transfer on its books. Exhibit J to Corbin Affidavit. In addition, FAC issued a new stock certificate establishing "Harry W. Albright, Jr. as Trustee Appointed by Order of the U.S. District Court for the District of Columbia Dated June 23, 1992" as the registered holder of all capital stock of FAC. Exhibit 10 to Opposition. The new stock certificate, however, was never physically transferred to Mr. Albright. Instead, it was given to PBB as bailee for the Client in exchange for the old certificate, which had been cancelled. Exhibit 11 to Opposition.

Although the Trustee has demanded possession of the new stock certificate, PBB has refused its transfer, arguing that the Trustee's possession of the certificate would violate the Court's June 23, 1992 Order by destroying the Client's perfected security in-

terest. The Trustee, however, argues through counsel that the June 23, 1992 Order compels physical delivery of the certificate to him and that such transfer would not negate the Client's interest. PBB has offered to settle the dispute without the assistance of the Court by proposing that possession of the certificate be delivered to a third party acceptable to the Trustee. *See* Opposition at 2–3 n. 5 and Exhibit 2 to Opposition. The Trustee has not accepted PBB's offer, believing that such transfer would violate the Order Appointing Trustee. *See* Reply Memorandum in Further Support of the Trustee's Motion to Compel Patton, Boggs & Blow to Turn Over to the Trustee the First American Corporation Stock Certificate in Their Possession ("Reply"), filed October 15, 1992, at 1–6.

## DISCUSSION

The Order Appointing Trustee directs the Trustee to "collect and hold, subject to any existing lien, all the issued and outstanding shares of FAC." It is beyond dispute that all *shares* of FAC stock have been delivered to the Trustee in accordance with the June 23, 1992 Order, regardless of the fact that PBB still possesses the *certificate* representing those shares. According to well-established law, a certificate of stock is not the stock itself, *see* Fletcher Cyc. Corp. § 5092 (Perm.Ed.) and cases cited therein, and shares may be transferred without a change in the possession of the certificate. *See Lucas v. Lucas*, 946 F.2d 1318, 1324 (8th Cir.1991) ("The widespread use of clearing agents and computerized book entry systems has removed the need for shareholders to possess or transfer stock certificates."); *Louisiana State Sch. Lunch Employees Retirement Sys. v. Legel, Braswell Gov't Sec. Corp.*, 699 F.2d 512, 514 (11th Cir.1983) ("a security may be delivered without the purchaser's taking physical possession") (citing New York law and Uniform Commercial Code ("UCC") § 8–313(1)(c)). Under the UCC,

3. Prior to its acquisition of the loan, the Client, through PBB, sought and obtained the opinion of the General Counsel to the Federal Reserve Board that the acquisition with the accompanying security interest would not require the filing of a notice with the Federal Reserve Board under

the Change in Bank Control Act. *See* Exhibit 8 to Opposition to the Trustee's Motion to Compel Patton, Boggs & Blow To Turn Over to the Trustee the First American Corporation Stock Certificate in its Possession, filed September 30, 1992.

which governs the transfer of securities such as the shares involved in this dispute,[4] the FAC shares can be transferred while the certificate remains in the possession of a third party, as long as the third party acknowledges that it holds the shares for the transferee. *See* UCC § 8–313(1)(e). In a letter dated September 2, 1992, and in its Opposition, PBB has acknowledged the Trustee's status as shareholder of all FAC stock. Exhibit 1 to Opposition ("On behalf of our client, we recognize Mr. Albright, in his capacity as Trustee, as CCAI's successor-in-interest to said FAC stock and to CCAI's rights and obligations under the Pledge Agreement."); Opposition at 2 ("PBB, as bailee of the FAC Stock Certificate for its client . . ., acknowledges the Trustee as the holder and owner of the FAC shares.") (footnotes omitted). Given those acknowledgements, the letter of the sole director of CCAI stating that he is transferring the shares in accordance with the Order Appointing Trustee, the registration of the transfer in the name of the Trustee, and the recording of the transfer on the relevant books, the Trustee clearly holds all shares of FAC in satisfaction of the first sentence of Section III of the Order Appointing Trustee.

Besides directing the Trustee to collect and hold the FAC shares, however, the Order Appointing Trustee grants "all rights, titles, powers, and privileges of a shareholder of FAC," subject to any existing lien and to the applicable law of FAC's state of incorporation.[5] Although the possession of a stock certificate is a "right" or "privilege" arising from ownership of the stock, *see Joseph E. Seagram & Sons v. Conoco, Inc.,* 519 F.Supp. 506, 513 (D.Del.1981) (A stock certificate is a "valuable paper, the possession of which facilitates the sale and transfer of the underlying ownership interest.") (citing *Smith v. Universal Service Motors, Co.,* 17 Del.Ch. 58, 147 A. 247 (1929)), possession of the certifi-

cate by the Trustee would destroy the Client's perfected security interest in violation of the Court's June 23, 1992 Order.

Under UCC § 8–321(1), a security interest in certificated stock can only attach and become enforceable if the certificate is possessed by the secured party, an agent thereof, or a bailee who has been notified of the secured party's interest. *See FDIC v. W. Hugh Meyer & Assocs., Inc.,* 864 F.2d 371, 375 (5th Cir.1989), *reh'ng denied,* 871 F.2d 121 ("[N]o party . . . can have acquired a security interest in shares of (certificated) stock without having taken actual possession of the stock certificates."). A security interest is terminated, however, if the agent or bailee to whom the secured party transfers the certificate is the "debtor" or one too closely associated with the "debtor." UCC § 8–321(4); Official Comment 4. *See also Appeal of Copeland,* 531 F.2d 1195, 1204 (3d Cir.1976) (interpreting UCC § 9–305, a provision parallel to UCC § 8–321, to prohibit perfection of a security interest through possession by a person under the debtor's control); *In re Cedar Rapids Meats,* 121 B.R. 562, 571 (Bankr.N.D.Iowa 1990) (finding that escrow agent serving both parties was not controlled by debtor and could act as bailee); *In the Matter of Van Kylen,* 98 B.R. 455, 465 (Bankr.W.D.Wis.1989) (finding that UCC § 9–305 prevents a putative agent for the secured party from being "too closely aligned to the debtor"); *In the Matter of Black Watch Farms, Inc.,* 373 F.Supp. 711 (S.D.N.Y.1974) (holding that perfection is destroyed by debtor's possession of collateral). For purposes of UCC Article 8, "debtor" is defined to mean:

> the person who owes payment or other person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same

4. Because FAC is incorporated in Virginia it appears that Virginia law should govern the resolution of the Trustee's motion. Because the loan agreement involving BAII, FAC, and the Client, by its own terms, is governed by New York law, however, one may argue that New York law should be applied to resolve the Trustee's motion. The Court need not resolve the choice of law question, since Virginia and New York have

adopted identical provisions of the UCC. *See* VA.Code Ann. §§ 8.8–101 to 8.9–507 (Michie 1992); N.Y.Uniform Commercial Code §§ 8–101 to 9–507 (McKinney's 1992).

5. It was counsel to the Trustee who suggested the "subject to any existing lien" language in the proposed Order. *See* Reply at 4, ¶ 7.

person, the term "debtor" means the owner of the collateral in any provision of the title dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

UCC § 8–102(5) (incorporating by reference the definition of "debtor" found in UCC § 9–105(1)(d)).

■ Regardless of the fact that the Trustee himself does not owe payment under the BAII loan, he has been given legal title to the collateral underlying that loan—that is, the FAC shares. Consequently, the Trustee must be considered an "owner" of the shares and, therefore, he is a "debtor" as that term is defined in UCC § 9–105(1)(d) and used in UCC § 8–321(4). This is so notwithstanding the fact that the Trustee .holds the FAC shares for the benefit of others. *See Nat'l Bank of Washington v. Dixon,* 301 F.2d 507 (D.C.Cir.1961) (holding trustee-bank liable as "owner" of negligently maintained property); *Bliss v. Allentown Pub. Library,* 534 F.Supp. 356, 358 (E.D.Pa.1982) (acknowledging that trustee is "technically the owner of a trust's *res* "); *In re Wyatt,* 6 B.R. 947, 952 (Bankr. E.D.N.Y.1980) (finding that imposing a constructive trust creates a dual "ownership" in person holding legal title and person holding equitable title). Accordingly, transfer of the FAC stock certificate to the Trustee would be a transfer to a "debtor" and, therefore, under UCC § 8–321(4), would dissolve the Client's perfected security interest in the FAC shares. Therefore, however earnest and responsible the Trustee's desire to effectively carry out his duties and to seek relief from actions which he believes are incompatible with the Order Appointing Trustee, the Trustee's request for possession of the certificate must be denied.

■ Notwithstanding the Court's conclusion regarding the Trustee's inability to possess the FAC stock certificate, PBB's possession of the certificate may impede the Trustee's efforts to fulfill his obligations. In light of the difficulties which could be caused by PBB's possession, and because the Client's lien on the FAC shares would not be de-stroyed by physical transfer of the certificate to another not too closely aligned with the debtor,[6] PBB's earlier proposal that a bailee other than PBB and the Trustee possess the stock certificate is particularly appropriate. In the interests of economy, efficiency, and expediency, and in furtherance of the purposes for which the Trustee was appointed, the Court will hold the stock certificate unless and until, on motion or other notice, it appears necessary for a private third party to do so. The parties will be given notice of such transfer, if made. The document will be held in the vault located in the Finance Office of the Clerk's Office and access, if appropriate, will be granted upon written request to the Court.

### CONCLUSION

For reasons stated above, it is hereby

ORDERED that Court–Appointed Trustee Harry W. Albright Jr.'s Motion to Compel Patton, Boggs & Blow to Turn Over to the Trustee All Shares of First American Corporation in their Possession is denied. It is

FURTHER ORDERED that, on or before January 13, 1993, Patton, Boggs & Blow shall deliver the stock certificate issued in the name of "Harry W. Albright, Jr. as Trustee Appointed by Order of the U.S. District Court for the District of Columbia Dated June 23, 1992," representing all shares of First American Corporation, to the Finance Office of the Clerk's Office of the United States District Court for the District of Columbia and shall file a praecipe indicating that said delivery has been made. Should access to the stock certificate be sought, the person or entity seeking access shall file with the Court a written request delineating the nature of the request and the reasons therefor.

Telephonic communication of this Order has been made to counsel this 8th day of January, 1993.

IT IS SO ORDERED.

---

**6.** *See In re Cedar Rapids Meats* at 571; *In the Matter of Van Kylen* at 465; and discussion above.