UNITED STATES of America, Plaintiff,

v.

105,800 SHARES OF COMMON STOCK OF FIRSTROCK BANCORP, INC., Defendant.

UNITED STATES of America, Plaintiff,

v.

122,942 SHARES OF COMMON STOCK OF FIRSTROCK BANCORP, INC., Defendant.

UNITED STATES of America, Plaintiff,

v.

49,032 SHARES OF COMMON STOCK OF FIRSTROCK BANCORP, INC., Defendant.

Nos. 92 C 20289, 92 C 20288 and 92 C 20290.

United States District Court, N.D. Illinois, W.D.

June 14, 1993.

Keith C. Syfert, United States Attorney's Office, Michael F. O'Brien, Clark, McGreevy, Johnson, P.C., Rockford, IL, for plaintiff in No. 92 C 20289.

Michael N. Bledsoe, Bledsoe & Tuohy, Chicago, IL, Richard D. Gaines, Holmstrom & Kennedy, Rockford, IL, George J. Murtaugh, Jr., Robert M. Stephenson, Cotsirilos, Stephenson, Tighe & Streicker, Ltd., George N. Vurdelja, Jr., Stephen A. Glickman, Chuhak & Tecson, Daniel E. Reidy, Jones, Day, Reavis & Pogue, Chicago, IL, for defendant in No. 92 C 20289.

Keith C. Syfert, U.S. Attorney's Office, Rockford, IL, for plaintiff in Nos. 92 C 20288 and 92 C 20290.

Richard D. Gaines, Gregory P. Guth, Holmstrom & Kennedy, Rockford, IL, Theodore T. Poulos, Cotsirilos, Stephenson, Tighe & Streicker, Ltd., Kevin M. Flynn, Coffield, Ungaretti & Harris, Renan Isaac Sugarman, Fishman & Merrick, P.C., Chicago, IL, Maurice H. Connelly, Bayonne, NJ, for defendant in No. 92 C 20288.

Richard D. Gaines, Holmstrom & Kennedy, Rockford, IL, Michael N. Bledsoe, Bledsoe & Tuohy, Chicago, IL, for defendant in No. 92 C 20290.

## ORDER

REINHARD, District Judge.

### INTRODUCTION

On October 4, 1992, the United States of America (the government) brought an action pursuant to 18 U.S.C. § 981(a)(1)(C)[1] to forfeit property which constitutes proceeds traceable to an alleged bank fraud in violation of 18 U.S.C. § 1344.[2] Its forfeiture action is the subject of three pending lawsuits before the court (Nos. 92 C 20288, 20289, 20290) and the defendant property comprises a total of 277,774 shares of common stock of FirstRock Bancorp, Inc. Claimant Leichter in 92 C 20288 and claimants Boosalis, Kirschner and Robinson Engineering in 92 C 20289 have moved to vacate the Magistrate Judge's October 4, 1992 *ex parte* seizure order and to dismiss the forfeiture actions for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).[3] A hearing was held on the matter on June 9, 1993. All claimants' Rule 12(b)(1) motions to dismiss the forfeiture actions for lack of subject matter jurisdiction and to vacate the *ex parte* order will be addressed herein.

### FACTS

The facts relevant to the motions to dismiss are as follows. Beginning in May 1992, First Federal Savings and Loan Association of Rockford, Illinois, began the process of converting to First Federal Savings Bank, B.S.B. (First Federal), a federally chartered stock savings bank owned directly by FirstRock Bancorp, Inc. (FirstRock). In its verified complaint for forfeiture, the government asserts jurisdiction is proper pursuant to 28 U.S.C. §§ 1345, 1355 and venue is proper pursuant to 28 U.S.C. § 1395(b) "in that the defendant property is found in the Western Division of the Northern District of Illinois." (Complaint ¶¶ 2, 3). The government also asserts:

> The defendant property consists of a total of [____] shares of common stock ("stock") in FirstRock Bancorp, Inc. ("FirstRock"), a holding company for First Federal Savings Bank of Rockford, Illinois, issued in Rockford, Illinois on October 2, 1992, as further described in the attached "Schedule of Defendant Property" which is attached hereto and incorporated herein.

According to claimant Leichter, the government mischaracterized the nature of the transaction in its verified complaint.

---

1. Section 981(a)(1)(C) subjects to forfeiture to the United States property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344.

2. Section 1344 makes it an offense for a person:
   Whoever knowingly executes, or attempts to execute, a scheme or artifice—
   (1) to defraud a financial institution; or
   (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises[.]
   18 U.S.C. § 1344 (Supp.1993).

3. Robinson Engineering orally adopted the other claimants' motions on May 12, 1993.

FirstRock, the issuing entity, is a Delaware corporation. Sometime prior to October 4, 1992, FirstRock directed its stock transfer agent, First National Bank of Boston (the Boston Bank), located in Boston, Massachusetts, to print and distribute the stock certificates involved in the conversion. The Warrant of Seizure and Monition directed against the defendant property was executed by the United States Marshal on October 4, 1992, by personally serving it on FirstRock's President and Chief Executive Officer in Rockford, Illinois. Simultaneously, the U.S. Marshal served a copy of the order mandating transfer of the defendant stock and accompanying certificates. The Boston Bank printed the stock certificates representing the defendant property on October 5, 1992, and express mailed the certificates to the U.S. Marshal in Rockford, Illinois, on October 6, 1992.

Claimant Kirschner disputes the chronology of events and notes the government has offered no evidence to support its assertion that the stock certificates were printed on October 5, 1992. However, attached ·to claimant Boosalis' reply (which Kirschner adopted) is a letter sent from an agent of the Boston Bank to the U.S. Marshal's Office. The letter, dated October 6, 1992, lists the stock certificates ordered to be seized pursuant to the Magistrate Judge's seizure order. In addition, claimant Boosalis has attached a copy of an AirBorne Express Shipping Label from the Boston Bank to the U.S. Marshal's Office dated October 6, 1992. Presumably the Boston Bank mailed the stock certificates to the U.S. Marshal's Office on October 6, 1992. The sole remaining factual dispute is when the stock certificates were printed. During the hearing, the government noted the stocks listed by the Boston Bank in its October 6, 1992 letter are in the same order as the list of stocks attached to the government's verified complaint. Thus, the inference arises that the Boston Bank had the verified complaint in its possession when it printed the certificates. Based on the above-mentioned evidence, the court finds October 5, 1992, to be the date the Boston Bank printed the stock certificates.

## CONTENTIONS

Claimants assert the *res* which forms the basis of this forfeiture action was not within the territorial boundaries of the court's jurisdiction on the date of seizure so that the court lacks subject matter jurisdiction over this civil forfeiture action. Claimants also assert the government did not validly serve process. The government contends the court has subject matter jurisdiction over the present dispute because the intangible shares of FirstRock stock were within this district at the time of their seizure. Alternatively, the government argues Congress' post-seizure enlargement of forfeiture jurisdiction provides jurisdiction over the defendant property. The government also asserts it complied with Illinois statutory law in executing service of process.

## DISCUSSION

◼ Claimants Leichter, Boosalis and Kirschner urge this court to follow Delaware law, which fixes the situs of all stock of a Delaware corporation to be in Delaware for all purposes other than taxation. *See, e.g., Castro v. ITT Corp.*, 598 A.2d 674, 681 (Del. Ch.1991). However, this court declines to follow this interpretation of Delaware law in the instant case. In deciding an issue involving state law, the district court is to follow the laws of the forum state, including its choice-of-law principles. *See Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2257, 114 L.Ed.2d 710 (1991). However, the Due Process and Full Faith and Credit Clauses of the United States Constitution are threshold restrictions on the application of forum law. *Soo Line R.R. Co. v. Overton*, 992 F.2d 640 (7th Cir.1993). "For the application of a state's substantive law to be constitutionally permissible, sufficient contacts with that state must exist to ensure the choice of law is 'neither arbitrary nor fundamentally unfair.'" · *Overton*, 992 F.2d 644 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)). Even if Illinois' rules on conflict-of-laws dictate that Delaware law is to govern in the instant case, *see Petri v. Rhein*, 162 F.Supp. 834, 837–38 (N.D.Ill.1957) (validity of a stock transfer may be governed by the law

of the place of incorporation or the law of the place where the certificates are transferred), *aff'd,* 257 F.2d 268 (7th Cir.1958), an imposition of Delaware law would not be in keeping with constitutional limitations in the instant case. *See Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *U.S. Indus., Inc. v. Gregg,* 540 F.2d 142, 147–56 (3d Cir.1976) (situs of stock in sequestration action was not a sufficient contact with Delaware to support jurisdiction over defendant when the transactions in question were unrelated to the forum), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977).

As the government notes, the only connection Delaware has to this forfeiture action is that it is the place of incorporation of FirstRock. First Federal Savings Bank (First Federal), the federally chartered stock savings bank owned directly by FirstRock, is located in Illinois. All activity relating to the conversion occurred in Illinois. For example, First Federal received and processed all orders for purchases of FirstRock shares in Rockford, Illinois. In addition, funds for the stock purchases were deposited into First Federal accounts in Rockford. Moreover, all of the persons to whom the shares were to issue resided in Illinois. Therefore, because Illinois is the place with the most significant contacts to this forfeiture dispute, the court will apply Illinois law to determine the nature of the interests "seized."

### A. Illinois statutory and case law

#### 1. The res

■ In determining the situs of the stock for purposes of determining the court's subject matter jurisdiction, the court must determine what was seized on October 4, 1992. According to the affidavit of Lon Christensen attached to the verified complaint, FirstRock offered its available stock for sale until 12:00 p.m. on Thursday, September 24, 1992. (Christensen Aff. ¶ f). FirstRock's conversion closed on October 2, 1992. "At that time, FirstRock stock issued to those eligible Association depositors who had submitted stock order forms ... and payment for the stock ordered. Each share of FirstRock stock issued at a price of $8.75 per share." (Christensen Aff. ¶ g). When the govern-

ment seized the stock, no certificates representing the shares had yet been printed. Yet, it is clear the government did not seize thin air.

The Illinois Uniform Commercial Code (UCC) defines a "certified security" as "either the intangible interest, the instrument representing that interest, or both, as the context requires." 810 ILCS 5/8–102(c) (1993) (formerly ILL.REV.STAT. ch. 26, ¶ 8–102(c) (1991)). *See also Illinois–Indiana Fair Ass'n v. Phillips,* 328 Ill.´368, 159 N.E. 815 (1927) (if capital stock has been issued it is actual and valid stock and a stock certificate is not necessary to existence of the shares); *Connelly v. Estate of Dooley,* 96 Ill.App.3d 1077, 1082, 52 Ill.Dec. 462, 466, 422 N.E.2d 143, 147 (1st Dist.1981) ("[p]ossession of a stock certificate is not a prerequisite to ownership of an interest in a corporation or association"). *Accord United States v. BCCI Holdings,* 822 F.Supp. 1, 2 (D.D.C.1993) ("[a]ccording to well-established law, a certificate of stock is not the stock itself, and shares may be transferred without a change in the possession of the certificate" (citations omitted)). Thus, on October 4, 1992, the government "seized" an intangible interest. However, contrary to the government's characterization, this intangible interest was not "temporarily uncertified" after issuance and before being reduced to tangible certificates. At all times the intangible interest remained a "certified security." *See* 810 ILCS 5/8–102(c) (1993) (formerly ILL.REV.STAT. ch. 26, ¶ 8–102 (1991)).

#### 2. The Situs

■ After determining a valid intangible interest was in existence as of October 2, 1992, when FirstRock issued its shares, despite the absence of any certificates, the next step is to determine the situs of these shares. Claimant Boosalis asserts that under the Illinois UCC the situs (physical location) of a certificate is the exclusive location of the property interests represented by certified shares of a corporation and cites to 810 ILCS 5/8–401 *et seq.* in support of this proposition. The court has found no statutory language within the Illinois UCC which would support Boosalis' contention or even such an infer-

ence. Rather, in defining a certified security as the certificate *or* an intangible interest, it appears the Illinois UCC contemplates more than one situs, as was discussed *supra* in Part A(1). *See* 810 ILCS 5/8–102(c) (1993) (formerly ILL.REV.STAT. ch. 26, ¶ 8–102(c) (1991)).

Claimant Boosalis also argues common law recognizes the situs of stock as the place of incorporation of the issuing corporation. This is an incorrect proposition. Common law recognized stock as having more than one situs, such as the state of incorporation, the principal place of business, or where the certificate was physically located. *See* 2 ROBERT C. CASAD, JURISDICTION IN CIVIL ACTIONS § 9.01[1][c] (1991); FLETCHER CYC CORP § 5101 (Perm.Ed.) (although there is a tendency to merge the identity of shares into the certificate representing them and determine the situs by the location of the certificates, shares may have a situs at different places at the same time, depending on the circumstances and purposes). Admittedly, the Illinois UCC provides that no attachment upon a certified security is valid until the security is actually seized. *See* 810 ILCS 5/8–317 (1993) (formerly ILL.REV.STAT. ch. 26, ¶ 8–317 (1991)). However, this section does not apply in situations where the government effectuates the seizure. *See* 810 ILCS 5/8–317 cmt. 6 (1993) (formerly ILL.REV.STAT. ch. 26, ¶ 8–317 (1991)).

In *Illinois–Indiana Fair Ass'n v. Phillips,* 328 Ill. 368, 374, 159 N.E. 815, 818 (1927), after holding that stock certificates are unnecessary to the existence of shares, the Illinois Supreme Court stated, "[b]ut it is the payment, or the obligation to pay, for shares of stock, accepted by the corporation, that creates both the shares and their ownership." In the instant case, all contacts relating to payment of the shares of stock were in Illinois. All payments were made to FirstRock, and all stock depositors herein involved resided in Illinois. It is apparent the contractual relationship which creates a "share" was centered in Illinois. Consequently, for purposes of this forfeiture action the government seized the intangible interests on October 4, 1992, in Illinois. That these intangible interests were subsequently embodied in written certificates in Massachusetts is immaterial; the *res* had already been seized.

### 3. Valid Process

After determining what the government seized as well as its situs, the next step is to determine whether service of process on FirstRock's President and Chief Executive Officer was sufficient. The government contends the shareholders were owners of their respective shares at the time of the seizure, regardless of the absence of certificates. Claimant Leichter argues the government's concession rendered its service of process on FirstRock's president insufficient because it should have served process on the shareholders. Claimant Boosalis, on the other hand, disputes ownership. Boosalis notes that under Illinois statutory law, when stock is transferred through a financial intermediary, an actual transfer of the stock does not take place until the purchaser "acquires possession" of the security or when the financial intermediary sends confirmation of the purchase and records such by book entry or otherwise. *See* 810 ILCS 5/8–313(1)(a), (d) (1993) (formerly ILL.REV.STAT. ch. 26, ¶ 8–313 (1991)). Boosalis argues neither of these events occurred in the instant case and concludes that as of October 4, 1992, the shares were still in FirstRock's possession.

The court need not determine who was the owner of the intangible interests in the FirstRock stock at the time of the seizure. As all parties concede at the hearing, no section of the Illinois UCC directly addresses the unique facts of the instant case. Moreover, while the court believes it should look to state law in defining the nature of the interests seized, *cf. Easter House v. Felder,* 910 F.2d 1387, 1395 (7th Cir.1990) (state law may define a "property interest" for purposes of 42 U.S.C. § 1983), *cert. denied,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991), the procedure to follow regarding service of process is governed by federal law.

The Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rules) govern forfeiture cases, including the instant case. *See* 18 U.S.C. § 981(b)(2)

(Supp.1992).[4] Supplemental Rule E(4)(c) governs the execution of process against intangible property. *See* Supp.R. E(4)(c); 7A MOORE'S FEDERAL PRACTICE ¶ E.09. According to Rule E(4)(c), service of a warrant on intangible property is accomplished by leaving a copy of the complaint and process with "the garnishee or other obligor." *See* Supp.R. E(4)(c); *United States v. Two Thousand, Five Hundred Thirty–Eight Point Eighty–Five Shares (2,538.85) of Stock Certificates of the Ponce Leones Baseball Club, Inc.,* 988 F.2d 1281, 1284 (1st Cir.1993). Claimant Leichter argues that because there was no technical "garnishee" or "other obligor" in the present case, execution of service on Leichter was the only acceptable means of complying with Supplemental Rule E(4)(c). This is so, Leichter argues, because he is the owner of the shares and the only entity with any ownership control or custody of the property. Regardless of whether Leichter was owner of the shares on October 4, 1992, the court disagrees with the proposition that only the owner may be served with process under the Supplemental Rules.[5]

While the court agrees service of process on the owner is permissible, the statute also allows for service of process on the "garnishee" or "other obligor". Supp.R. E(4)(c). An obligor may be "a broker or some other person acting in an agency or quasi-agency capacity and who expects to receive monies all or part of which he will have to forward to the defendant." 7A MOORE'S FEDERAL PRACTICE ¶ E.09. Arguably, FirstRock, the issuing bank, was still acting in the capacity of agent for the shareholders between October 2, 1992, and October 6, 1992. Therefore, regardless of whether FirstRock was the owner of the shares or agent of the shareholders on October 4, 1992, the government complied with Supplemental Rule E(4)(c) in serving FirstRock's CEO.[6]

■ In light of the analysis set forth above, the government's alternative argument need not be addressed. The court wishes, however, to address a policy argument raised by counsel for claimant Leichter at the hearing. Claimant Leichter argued the government's actions, if found to be permissible, will have severe ramifications on the stock market. This is so, Leichter argued, because if the government is allowed to seize shares of stock without serving the shareholders and without seizing the certificates, those shareholders could begin trading on the open market in complete ignorance as to any government seizure. The resulting ramifications would be far-reaching, Leichter concluded.

The court is not persuaded by this argument. Congress has recently expressed a strong policy statement; the amended section 1355 allows a forfeiture action to be brought in the district court for the district in which any of the acts giving rise to the forfeiture occurred and authorizes extraterritorial process. *See* 28 U.S.C. § 1355(b)(1)(A), (d) (Supp.1993). While this court does not address the retroactivity of the amended section 1355, *see Republic Nat'l Bank of Miami v. United States,* —— U.S. ——, ——, 113 S.Ct. 554, 565–66, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring), the court recognizes the amended version as expressing a strong Congressional intent to allow the government to vigorously pursue forfeiture actions. In granting expanded jurisdiction to the district courts, Congress presumably concluded that the benefits in allowing the government to pursue forfeiture actions outweighs any temporary ramifications caused by such actions. In addition, by sub-

---

**4.** According to § 981(b)(2):

Property shall be seized under paragraph (1) of this subsection upon process issued pursuant to the Supplemental Rules for certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property[.]

18 U.S.C. § 981(b)(2).

**5.** Claimant Robinson Engineering also interprets the Supplemental Rules to require service of process on the owner.

**6.** The court is unpersuaded by claimant Boosalis' argument that the government could have seized the stock only by impermissibly serving extraterritorial process on the certificates in Boston. Because the court has classified the property seized as an intangible property interest, it is proper to rely on Supplemental Rule E(4)(c) rather than Supplemental Rule E(4)(b).

jecting civil forfeiture actions to the Supplemental Rules, which authorize the government to give notice by publication only, *see* Supp.R.C(4); *Ponce Leones Baseball Club,* 988 F.2d at 1284 n. 4, Congress made a conscious decision to regulate civil forfeiture actions differently from civil lawsuits. These policy reasons do not change because the subject of the forfeiture action is stock allegedly derived from bank fraud rather than a car allegedly derived from an illegal drug transaction.

### B. Sanctions

It is apparent from this court's decision that the government's actions in the present case were arguably supported by and in compliance with the applicable statutes. Consequently, the court finds claimant Boosalis' plea for Rule 11 sanctions is meritless. Likewise, his claims for a certificate of reasonable cause, *see* 28 U.S.C. § 2465 (1991), or for attorney's fees, *see* 28 U.S.C. § 2412 (Supp. 1993), are denied. The court is also unpersuaded by his argument that the government *could* have served claimant Boosalis with an *in personam* lawsuit. Civil forfeiture actions are *in rem* proceedings, and the government need only concern itself with properly securing the *res.* In addition, claimant Boosalis raises several arguments in his reply which more appropriately belong in his Rule 12(b)(6) motion to dismiss. Thus, the court will address those arguments at a later date.

### *CONCLUSION*

For the reasons set forth above, claimants' motions to vacate the *ex parte* order and to dismiss for lack of subject matter jurisdiction are denied. Those claimants who have not filed reply briefs in support of their motions to dismiss/summary judgment are given until June 23, 1993, to do so. Those claimants who have not filed responses to the government's motion to strike are given until June 18, 1993, to do so. The government is given until June 23, 1993, to file a reply brief in support of its motion to strike. The briefing schedule for the government's motion for entry of default judgment remains in effect.