UNITED STATES of America,
Plaintiff-Appellant,

v.

1982 YUKON DELTA HOUSEBOAT, Vin # YDH33930781; 1982 Yukon Delta Houseboat, Vin # YDH3543XM82E–35; et al., Defendants,

and

Richard Dennis May, Linda Dianne Watson and Ray-May Corporation, Claimants-Appellees.

UNITED STATES of America,
Plaintiff-Appellee,

v.

A CONDOMINIUM LOCATED AT 3467 # D, NIGHTFLOWER LANE, LAS VEGAS, NV, Further Described As Unit # 68, Lot Q, Recorded in Book 1463, # 1422453, in the Office of the County Recorder, Clark County, Nevada, Defendant,

and

Richard Dennis May and Linda Dianne Watson, Claimants-Appellants.

Nos. 84–1790, 84–1843.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 13, 1985.

Decided Oct. 25, 1985.

Barry Lieberman, Asst. U.S. Atty., Las Vegas, Nev., for appellant.

Morgan C. Taylor, Felton, Cal., for appellee.

Before DUNIWAY and CHOY, Senior Circuit Judges, and FARRIS, Circuit Judge.

## OPINION

CHOY, Senior Circuit Judge:

In two separate suits, consolidated for this appeal, the United States government seeks forfeiture, under 21 U.S.C. § 881(a)(6), of ten houseboats and a condominium it claims were bought with the money received from illegal controlled substance transactions. We reverse and remand as to each appeal.

In the suit for the houseboats, the government contends that convicted drug trafficker Ray Parker (a/k/a Richard Bostic and Steven Dubos) used such money to purchase the ten houseboats, but that he got claimant Richard Dennis May to front for him, designating May's company, Ray-May Corp. (d/b/a R & D Boat Sales), as the nominal owner of the houseboats.

Under 19 U.S.C. § 1615, the burden of proof in this forfeiture proceeding is on the claimants (Richard Dennis May, his wife, and Ray-May Corp.), provided that the government first shows probable cause to institute the forfeiture action. The district court held that the government had failed to establish probable cause and ordered that the seized houseboats be returned to the claimants. The court also refused to issue a certificate of reasonable cause under 28 U.S.C. § 2465. The government appeals.

In the separate suit for the condominium, the government alleged in its complaint, filed on May 26, 1982, that the claimants, Richard Dennis May and his wife, purchased the condominium with cash from illegal drug sales. An arrest warrant against the condominium was issued. The claimants were served with the warrant, the complaint, and a court order directing interested persons to file a verified claim to the condominium by August 9, 1982.

On June 16, 1982, the claimants filed an answer to the complaint, identifying themselves as owners of the condominium and admitting the government's allegation that they were the purchasers of the condominium. They did not, however, file a verified claim to the property. Rule C(6) of the **Supplemental Rules for Certain Admiralty and Maritime Claims** states that:

> The claimant of property that is the subject of an action in rem shall file his claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve his answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action.

Over a year later, after the parties had completed discovery and the case had been set for trial, the government realized that a verified claim had not been filed. The government's attorney advised the claimants to file a verified claim and agreed not to oppose the late filing. The district court, however, denied the claimants' application for permission to file a verified claim, stating that there is no provision in the law for extending the time for the filing of said claims. It further noted that the claimants had not shown excusable cause for leave to file their claims late because they had had adequate notice of the need to file a timely verified claim. Judgment was entered for the United States. Claimants' motion for a new trial was denied and they appeal.

## ISSUES

1) Did the district court in the first suit err in finding that the government had not

established probable cause for the forfeiture of the ten houseboats?

2) Did the district court in the second suit err in its decision rejecting the claimants' application for permission to file a verified claim?

*Houseboats*

■ We review a district court's probable cause determination in a forfeiture proceeding as a question of law. *United States v. $93,685.61 In U.S. Currency,* 730 F.2d 571, 572 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984).

The government can show probable cause that a seized item is subject to forfeiture on a "reasonable ground for belief," *id.* at 572, that the seized item was traceable to an illegal controlled substance transaction. 21 U.S.C. § 881(a)(6).[1] This belief must be more than "mere suspicion," but can be created by less than "prima facie proof." 730 F.2d at 572.

■ Circumstantial evidence is sufficient to show probable cause. *Id.* at 572. In light of the evidence produced at trial, the district court erred in ruling that the government had not established a reasonable ground for belief that the houseboats were proceeds traceable to illegal narcotics transactions.

The most damaging direct evidence of the houseboats' connection to illegal drug money is the testimony from Drug Enforcement Administration ("DEA") Agent Moren and DEA informant Wilder. Wilder testified that Ray Parker told him that the R & D Boat Sales' houseboats were his (Parker's), and that May was "fronting" for him. Parker told Wilder that May was running the houseboats for him because Parker did not have a visible means of support other than his narcotics transactions and didn't want anything in his name. Wilder testified that Parker told him that all of his possessions, money and income were from dealing in narcotics.

■ Corroborating Wilder's testimony was Agent Moren who testified that Parker told him that he (Parker) owned several houseboats in Las Vegas, and that they were purchased with money received from selling narcotics. Because Wilder's and Moren's testimonies provided direct evidence that the seized houseboats were bought with money derived from illegal narcotics deals, they alone may be sufficient to establish the requisite reasonable ground for belief. Although such testimony may be hearsay,[2] the question of probable cause does not depend upon the admissibility of the evidence upon which the government relies, but only upon the legal sufficiency and reliability of the evidence. *See United States v. One 56-Foot Motor Yacht Named the Tahuna,* 702 F.2d 1276, 1283 (9th Cir.1983) (holding that probable cause may be established by otherwise inadmissible hearsay).

The reliability of the possibly hearsay testimony is buttressed by other non-hearsay corroborating evidence.[3] The fact that Parker was caught red-handed arranging

---

**1.** 21 U.S.C. § 881 provides:

    (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

    ·    ·    ·    ·

    (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, . . . .

**2.** The government argues that the real party in interest is Parker and that his statements are therefore not hearsay but admissions under Fed.R.Evid. 801(d)(2)(A). We need not rule on

this contention, however, because hearsay may properly be considered in a probable cause determination. *See infra* text.

**3.** The claimants make reference to the so-called "missing witness" instruction. *See, e.g., United States v. Noah,* 475 F.2d 688, 691 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54, 414 U.S. 1095, 94 L.Ed.2d 728, 38 L.Ed.2d 553 (1973). However, Parker was not "peculiarly within the [government's] control," *id.,* but was equally available to the claimants. Therefore, we draw no inference from the failure to produce Parker. *See Wagner v. United States,* 264 F.2d 524, 531 (9th Cir.), *cert. denied,* 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959).

for and carrying out a $150,000-plus cocaine purchase substantiates his own statements that his sole source of income was from narcotics transactions.

The following evidence strongly suggests that Parker was the actual purchaser of the houseboats that were bought in the name of Ray-May Corp.: Parker was actively involved in the negotiations for the purchase of the houseboats. He went to the offices of Yukon Delta (seller of the houseboats) and inquired about the houseboats and took one for a test ride. Although other payments for the houseboats were made by check from Ray-May Corp., Parker made a partial payment of $13,500 in cash consisting of $100 and $50 bills. May did not file income tax returns for 1979, 1980, and 1981, and had little verifiable income for 1980 and 1981. He could not remember whether he had received any large gifts from anyone. May claims he got the money to purchase the houseboats from a $150,000 loan from Ed Gromand. His credibility was questionable because his testimony at trial regarding the details of that purported loan were in some respects inconsistent with his prior deposition testimony. Furthermore, although he listed Ray-May Corp. assets as personal assets on various credit applications, he never listed any Gromand loan to Ray-May Corp. as a liability on those applications.

Although May testified at trial that the Gromand loan money was fully delivered to him prior to September 12, 1981, large sums of cash were deposited into Ray-May Corp.'s bank account between November, 1981 and March, 1982. He could not account for those deposits other than to say that they must have come from the Gromand loan, his safety deposit box, or his personal bank accounts. Finally, shortly after Parker was arrested for his cocaine transaction, May was caught in an adjacent hotel room flushing cocaine down the toilet.

The above evidence certainly gives rise to a reasonable belief that Ray-May Corp. lacked a source of funds to purchase the houseboats itself, and that Parker used the income he derived from illegal narcotics transactions to purchase the houseboats, but arranged for Ray-May Corp. to front for him and to be the nominal owner.[4]

The district court clearly erred in finding that the government had not established probable cause. The judgment for the claimants is REVERSED and the case is REMANDED so that claimants may attempt to establish by a preponderance of the evidence[5] that the houseboats are not in fact proceeds traceable to illegal narcotics transactions.[6]

*Condominium*

■ We hold that the district court erred in ruling that it had no discretion to extend the time for the filing of a verified claim, and in failing to consider all factors relevant to the exercise of that discretion.

Under Rule C(6) of the **Supplemental Rules for Certain Admiralty and Maritime Claims,** the claimant of property must "file his claim within 10 days after process has been executed, *or within such additional time as may be allowed by the court.*" (emphasis added). *See United States v. $149,345 United States Currency,* 747 F.2d 1278, 1282 (9th Cir.1984). Although the discretion to grant additional time would normally be exercised at or shortly after the time process is executed,[7] nothing in the Rule imposes a time limit on the exercise of that discretion. Of course,

---

4. There is no need to tie the houseboats to proceeds of a *particular identifiable* illicit drug transaction. *See United States v. $93,685.61 In U.S. Currency,* 730 F.2d at 572 (finding probable cause that seized currency was furnished in exchange for drugs despite no evidence that the currency was connected to any particular drug transaction).

5. *See United States v. $93,685.61 In U.S. Currency,* 730 F.2d at 572.

6. Because judgment for the claimants is reversed, there is no need to reach the issue of whether a certificate of reasonable cause should have been issued. *See* 28 U.S.C. § 2465.

7. In fact, the district court did offer additional time at the outset by giving potential claimants until August 9, 1982, more than 10 days after process was executed, to file verified claims.

the court's discretion is not unbounded. It should only exercise its discretion to grant additional time where the goals underlying the time restriction and the verification requirement are not thwarted.

The purpose of the time limit is to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay. Claimants (Richard Dennis May and his wife, Linda Dianne Watson) came forward and announced their interest in the condominium by filing an answer to the government's complaint that identified themselves as the owners of the condominium and admitted the government's allegation that they were the purchasers of the condominium. Both the district court and the government were therefore fully aware of their claim to ownership.

Discovery was conducted and the district court even set the case for trial. For over a year, everything had proceeded in the same manner as it would have had claimants properly filed a verified claim. There is thus no policy reason to prevent the case from* further proceeding provided claimants do file a verified claim. In this case, the goals behind the time restriction would not be defeated by allowing the late filing.

We do not minimize the significance of the requirement that a claim be verified on oath or solemn affirmation. We have recognized that the danger of false claims is substantial. *See Baker v. United States,* 722 F.2d 517, 519 (9th Cir.1983). However, where a claimant has made known to the court and the government his interest in the subject property (in this case, by filing an answer asserting ownership of the property) before the deadline set for the filing

of a proper claim has passed,[8] the policy interest underlying the requirement of a timely verified claim would not be injured by allowing the claimant to perfect his claim by subsequent verification. We agree that "amendments should be liberally permitted to add verifications to claims originally lacking them." 7A J. Moore & A. Pelaez, Moore's Federal Practice, ¶ C.16, at 700.16 (2d ed. 1983).

Of course, the government should not be *required* to proceed to trial with a case where no claimant files a timely verified claim. If a claimant does timely come forward, but fails to verify his or her claim, the government can move the court to have the property forfeited for lack of a verified claimant. Presumably, the claimant could then ask the court to exercise its discretion to allow late filing of a verified claim. Here, however, the government did not take such action and instead treated the claimants as the owners and proceeded with the case in preparation for trial for over a year. Under these circumstances the government would certainly not be prejudiced by a court order allowing the claimants to file a verified claim at this time.[9] Here, the absence of a verification was even less significant because at no time during the entire proceeding did any party to the dispute doubt the claimants' ownership of the condominium.[10]

The only factor weighing against permitting a late filing is the fact that the claimants were fully aware of the forfeiture proceeding against their condominium and were served with papers directing any interested party to file a verified claim by August 9, 1982. They thus had notice of the need to file a timely verified claim, but they chose to file only an answer.[11] However, because the district court considered

---

**8.** Claimants filed their answer on June 16, 1982, which was before the August 9, 1982 deadline.

**9.** The absence of any prejudice is further indicated by the fact that the government originally agreed to not oppose the claimants' request to file a late verified claim.

**10.** The government's own complaint alleges that the claimants purchased the condominium.

**11.** It is unclear why claimants filed only an answer and not the required verified claim. Their current attorney, however, stated in a sworn affidavit that the claimants had thought that a proper claim had been filed.

only this factor, it failed to take into account the other countervailing factors discussed above.

We therefore REVERSE and REMAND to the district court with instructions that it exercise its discretion in deciding whether or not to allow claimants to submit a verified claim only after considering all relevant factors as indicated by this opinion.