959 F.2d 243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff,
v.
VACANT LAND KNOWN AS PALM ESTATES, LTD., aka Palm Estates
Subdivision, Assessment No. 628-101-18, County of
San Diego, CA., et al, Defendants,
Max WEXLER, Counter-Claimant/Appellant,
v.
UNITED STATES of America; Alan J. Le Zalla; Sandra Le
Zalla; Kevin O'Neill, Counterclaim-Defendants/Appellees.
 No. 91-55415.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 7, 1992.
Decided March 31, 1992.
 
 Before BRUNETTI, O'SCANNLAIN and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Max Wexler appeals the denial of his motion challenging the federal magistrate judge's findings and the district court's order directing payment of specified funds to Appellee, the United States of America. The specified funds were to be the proceeds of a forfeiture sale of property the United States seized from Appellees Alan and Sandra LeZalla. The funds were to be distributed in accordance with a 1986 Stipulation Agreement with the LeZallas which was to account for all claims of lien holders.
 
 
 3
 The district court rejected Wecler's claim that he is a recognized lien holder under the stipulation on the ground that Wexler filed his judgment lien against the property after the stipulation and after the United States entered into a land sale contract with Appellee Kevin O'Neill. The district court also rejected Wexler's other claims to the sales proceeds and his procedural challenges to the forfeiture sales process.
 
 
 4
 We AFFIRM the district court's decision, DENY Appellee O'Neill's motion for attorneys' fees, and REMAND the case to the district court to enable it to consider entry of an order requiring Wexler to execute any and all documents necessary to allow the United States to consummate the sale of the property and to convey clear title to O'Neill.
 
 STATEMENT OF FACTS & PROCEDURAL HISTORY
 
 5
 This appeal arises from a Complaint for Forfeiture filed by Appellee the United States of America ("the United States" or "government") against Defendant Vacant Land Known as Palm Estates, Ltd. ("Property"). The forfeiture proceeding resulted from a criminal action prosecuted by the United States against Robert Max Capras ("Capras"), the original owner of the Property. Shortly before his arrest, Capras transferred the Property to the present titleholders, Appellees Alan J. and Sandra LeZalla ("LeZallas").
 
 
 6
 On September 25, 1984, the United States filed a complaint for forfeiture against the Property and, on October 1, 1984, recorded a Notice of Lis Pendens against the Property. AT that time there were four liens recorded against the Property (Jon Jentz, South Bay Union District School, Sweetwater Union High School District and Duffy Collections, Inc.).
 
 
 7
 On May 8, 1986, the United States and the LeZallas entered into a court-approved Stipulation for Interlocutory Sale in which they agreed, inter alia, that the government would retain fifty percent of the net proceeds and the remaining fifty percent of the net proceeds would be returned to the LeZallas. The Stipulation Agreement defined net proceeds as follows:
 
 
 8
 The "net proceeds" of the sale shall include all monies received from the sale of the defendant, excluding: (1) The principle amount of fifty thousand dollars ($50,000.00) owing to Jon Jentz, as reflected in a recorded deed of trust in favor of Jon Jentz, San Diego, California; and (2) one half of any real estate commissions, fees and other expenses and costs of the sale; and (3) any other lien recorded against the property.
 
 
 9
 Pursuant to a court-approved amended stipulation, in 1988, the United States Marshals Service retained a broker to sell the Property. The Property was appraised at $218,000 and publicly listed for several months.
 
 
 10
 On January 23, 1989, the Government entered into a contract with Appellee Kevin O'Neill ("O'Neill") to sell the property to him for $210,000. O'Neill placed $5,000 in escrow as consideration for the contract.
 
 
 11
 On January 30, 1989, seven days after the United States entered into its contract with O'Neill, Appellant Max Wexler ("Wexler") domesticated a judgment against the LeZallas and recorded a judgment lien against the Property for $171,062.51.
 
 
 12
 On August 28, 1989, the United States, finding that it was unable to convey clear title to O'Neill because of various liens (including Wexler's), moved the district court for an Order Directing Payment of Specified Funds to the United States, in order to enable the government to consummate the sale. The purpose of the government's motion was to put all lien holders, including those who had recorded their claims after the United States recorded its Notice of Lis Pendens, on notice of the priority of their liens, and to provide them with an opportunity to be heard in court. Wexler appeared at the hearing to argue against the motion. The district court denied the government's motion because the government lacked a judgment of forfeiture.
 
 
 13
 On October 17, 1989, the government filed an Ex Parte Application for Judgment of Forfeiture. Although all lienholders, including Wexler, received notice, none opposed the application.
 
 
 14
 On October 18, 1989, the district court entered the Judgment of Forfeiture, incorporating the terms of the May 8, 1986, Stipulation agreement.
 
 
 15
 On November 3, 1989, armed with the Judgment of Forfeiture, the government again filed an Ex Parte Application for an Order Directing Payment of Specific Funds to the United States. Wexler and the other lienholders received notice of the application, but none opposed it.
 
 
 16
 On November 6, 1989, the district court signed the Order, which incorporated the 1986 Stipulation. The Order specified that the liens recorded at the time of the Stipulation shall be paid from the proceeds of the sale, and any disputes shall be brought before the United States Magistrate for resolution.
 
 
 17
 On January 5, 1990, Wexler filed a motion before the Honorable Magistrate Judge Irma Gonzales requesting (1) authorization to file a claim and an answer in the forfeiture action; (2) a determination that his judgment lien should be paid from the sales proceeds of the Property prior to any determination of "net proceeds"; (3) a determination that he should be allowed to "redeem" the Property from the current sale to O'Neill; and (4) an evidentiary hearing on the validity of the Jon Jentz and the Profectus Futures, Inc., liens.
 
 
 18
 On February 2, 1990, the Magistrate denied Wexler's motion, deciding all issues in favor of the United States.
 
 
 19
 On October 16, 1990, the district court confirmed the magistrate judge's Findings of Fact and Conclusions of Law, and denied Wexler's motion to object to the magistrate judge's findings, holding that Wexler had no right of redemption and that the Property was not subject to judicial sale. The court found that the only liens with priority over the United States were those in effect at the time of the 1986 Stipulation.
 
 
 20
 Wexler appeals the district court's denial of his motion to challenge the findings of the magistrate judge, and its Order Directing Payment of Specific Funds to the United States. O'Neill requests damages and double costs against Wexler for bringing a frivolous appeal.
 
 DISCUSSION
 A. WEXLER'S CLAIM
 
 21
 1. District Court's Interpretation of the Stipulation
 
 
 22
 We reject Wexler's argument that the government and the LeZallas subordinated their claims to both present and future lienholders, which he claims is demonstrated by the provision in the Stipulation Agreement to pay "any other lien recorded against the property" before dividing the net proceeds.
 
 
 23
 The magistrate judge found that "it is only reasonable to interpret that language [i.e., "any other lien recorded against the property"] to mean any other lien recorded against the property prior to the date of the 1986 Stipulation."
 
 
 24
 The application of principles of contract interpretation to the facts is a question of law reviewable de novo. Aetna Casualty & Surety v. Pintlar Corp., 948 F.2d 1507, 1511 (9th Cir.1991). The de novo standard of review applies if the district court interprets a contract within its four corners, without reference to extrinsic evidence, or if there is no indication that the district court made factual findings regarding extrinsic evidence. In re Agricultural Research & Technology Grp., 916 F.2d 528, 538 (9th Cir.1990). Although the government offered the declaration of its attorney as evidence of its intent in drafting the Stipulation, there is no indication in the record that the district court considered this extrinsic evidence. Accordingly, we review the district court's interpretation of the Stipulation de novo.
 
 
 25
 The interpretation of a contract entered pursuant to federal law in which the United States is a party is controlled by federal law. Kennewick Irrigation District v. United States, 880 F.2d 1018, 1032 (9th Cir.1989). This court has adopted a reasonableness standard in contract interpretation. Id. ("Preference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory.")
 
 
 26
 In the present case, the United States clearly did not intend to subrogate its claim to subsequent lienholders. First, the government entered into a Stipulation Agreement with the LeZallas in order to facilitate the disposition of the Property, as demonstrated by the government's prompt placement of the property on the market followed soon after by a sales contract with Kevin O'Neill. The United States would not have acted in such a fashion if it did not believe it could convey clear title. Second, it is reasonable to assume that the government and the LeZallas only intended to account for present lienholders, since claims arising subsequent to the illegal use upon which the forfeiture was predicated are legally invalid. See discussion infra; Simons v. United States, 541 F.2d 1351, 1352 (9th Cir.1976).
 
 
 27
 2. Wexler's Property Right Under the Judgment Lien
 
 
 28
 We reject Wexler's claim that his property right was vested by virtue of his judgment lien and that, therefore, O'Neill must take subject to Wexler's vested rights as provided by California Code of Civil Procedure § 697.310.
 
 
 29
 Under the "relation back" doctrine codified at 21 U.S.C. § 881(h), all rights, title and interest in forfeited property vest in the United States at the time the illegal act was committed.[1] In Simons v. United States, 541 F.2d 1351 (9th Cir.1976), this court held that opposition to forfeitures can be dismissed if the claimant acquired his interest after the illegal use. Id. at 1352 (joining Florida Dealers and Growers Bank v. United States, 279 F.2d 673 (5th Cir.1960); Wingo v. United States, 266 F.2d 421 (5th Cir.1959); Weathersbee v. United States, 263 F.2d 324 (4th Cir.1958)).
 
 
 30
 In the present case, Wexler acquired his interest almost five years after the illegal use. Therefore, he possesses no vested right to the Property.
 
 3. Timeliness of the Claim
 
 31
 We reject Wexler's argument that he should have been permitted to file a late motion to file a claim under the court's discretion because of the "unusual circumstances of this matter."
 
 
 32
 Supplemental Rule for Certain Admiralty and Maritime Claims C(6), which governs the seizure of forfeited property, provides that a claimant must file a claim within ten days after process has been served, or " 'within such additional time as may be allowed by the court.' " United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1435 (1985) (quoting Rule C(6)). "The purpose of the time limit is to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay." Id. at 1436. The Yukon Delta court held that a court's discretion to grant additional time should only be exercised if the goals of the underlying time restriction are not thwarted. Id. The court noted that a factor weighing against permitting a late filing would be the claimant's knowledge of the forfeiture proceeding. Id.
 
 
 33
 In the present case, Wexler had knowledge of the proceeding since he received notice of the government's application for both the Judgment of Forfeiture and the Order Directing Payment of Specific Funds to the United States. Wexler chose not to file a claim or contest the motions until two months after the court entered final judgment. Wexler presents no explanation as to why he failed to act in a timely fashion, and the facts of the case, unlike Yukon Delta, present no factors which weigh in favor of a discretionary time restriction exemption. Moreover, a delay would thwart the goals of the underlying time restrictions since Mr. O'Neill's financing arrangements are increasingly jeopardized as time passes.
 
 4. Redemption Rights
 
 34
 a. Judicial Sale
 
 
 35
 We reject Wexler's argument that 21 U.S.C. § 881(b) calls for the use of admiralty procedures in civil forfeiture actions, and these procedures put into effect Local Rule 310-4 for the Southern District of California, which requires a judicial sale of the property where Wexler would have had the right to redeem.
 
 
 36
 The disposition of forfeited property is governed by 21 U.S.C. § 881(e)(1) which provides, in pertinent part:
 
 
 37
 Whenever property is ... criminally forfeited under this subchapter the Attorney General may--
 
 
 38
 (A) retain the property for official use ...
 
 
 39
 (B) sell, by public sale or any other commercially feasible means ... [Emphasis added.]
 
 
 40
 This section gives the Attorney General, not the court, the power to sell forfeited property. Nowhere in this provision is there a requirement for a judicial sale.
 
 
 41
 In the present case, the United States Marshals Service acted with authority provided by 28 C.F.R. § 0.111(i) in supervising the public sale of the Property.[2]
 
 
 42
 Wexler erroneously states that § 881(b) applies to the disposition of the property. On the contrary, § 881(b) provides procedures for the seizure of the property, whereas the disposition (i.e., sale) of the property is provided by § 881(e) (as discussed above).
 
 
 43
 Since Local Rule 310-4, which provides for judicial sales, was predicated on the application of the admiralty procedures, the district court did not err in holding that this litigation is not subject to the local rule requiring a judicial sale of the subject Property.
 
 
 44
 b) California Redemption Laws
 
 
 45
 We reject Wexler's argument that California Civil Code §§ 2903 and 2904 grant him the right to redeem the property.
 
 
 46
 California Civil Code § 2903 provides, in pertinent part:
 
 
 47
 Every person, having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed.... [Emphasis added.]
 
 
 48
 Section 2903 addresses redemption of property from foreclosure proceedings, not forfeiture proceedings. Therefore, the statute is inapplicable to the present case.
 
 
 49
 California Civil Code, § 2904 provides, in pertinent part:
 
 
 50
 One who has a lien inferior to another, upon the same property, has a right:
 
 
 51
 1. To redeem the property in the same manner as its owner might, from the superior lien ... [Emphasis added.]
 
 
 52
 Under this section, Wexler has the redemption rights of the owners, the LeZallas. The LeZallas have stipulated away their rights to all but fifty percent of the net proceeds of the sale. Therefore, under § 2904, Wexler only has the right to "redeem" the LeZallas' portion of the net proceeds, not the Property itself.
 
 
 53
 Further, § 2904 provides for an inferior lienholder to redeem from a superior lienholder. In the present case, neither the United States nor the LeZallas are lien holders. Thus, § 2904 is inapplicable for a second reason.
 
 5. Evidentiary Hearing
 
 54
 We reject Wexler's contention that the district court was required to schedule an evidentiary hearing to determine the validity of the Profectus Futures, Inc., and the Jon Jentz trust deed liens.
 
 
 55
 "A trial court's decision whether to hold an evidentiary hearing is reviewed for abuse of discretion." United States v. Mejia, No. 91-50005, 1991 WL 271368, at * 3 (9th Cir. Dec. 24, 1991). Under the abuse of discretion standard, the court will not reverse absent a definite and firm conviction that the district court committed a clear error of judgment. Abatti v. Commissioner, 859 F.2d 115, 117 (9th Cir.1988). Wexler presents no evidence that the district court committed a "clear error of judgment" in denying an evidentiary hearing.
 
 
 56
 B. O'NEILLS CLAIM--COSTS AND ATTORNEY'S FEES
 
 
 57
 We DENY Kevin O'Neill's request for costs and attorney's fees against Wexler for bringing a frivolous appeal pursuant to FED.R.APP.P. 38.[3]
 
 
 58
 "An appeal is frivolous if the result is obvious, or the arguments of error are wholly without merit." Wilcox v. Commissioner, 848 F.2d 1007, 1009 (9th Cir.1988). The result may be obvious if precedent or unambiguous statutes foreclose the appellant's claims, see Wilcox, 848 F.2d at 1009, or if no argument for reversal is presented, see McConnell v. Critchlow, 661 F.2d 116, 117 (9th Cir.1981), or if a high degree of deference is owed to the decision below and the appellant presents no argument that could overcome that deference, see Napili Shores Condominium Homeowners' Ass'n v. NLRB, 939 F.2d 717, 721 (9th Cir.1991).
 
 
 59
 Wexler's statutory claims fall into the frivolous category. Although no adverse precedent exists, the statutes do not cover his claim. His claim that he should be allowed to file late also qualifies as frivolous; he presented no excuse for the late filing, arguing only that the condition of the property had not changed, which is irrelevant.
 
 
 60
 However, Wexler's claim that the Stipulation required the government to recognize his after-acquired lien falls just short of frivolous under the de novo standard of review. The plain language of the Stipulation supports Wexler's argument; it appears to include all liens, no matter when they arise. Although Wexler's interpretation of the Stipulation was incorrect, it was not "wholly without merit."
 
 C. CONCLUSION
 
 61
 In the interest of expediting O'Neill's long awaited right to clear title of the Property, we remand the case to the district court to enable it to consider entry of an order requiring Wexler to execute all documents which are necessary to allow the United States to consummate the sale.
 
 
 62
 AFFIRMED and REMANDED FOR FURTHER PROCEEDINGS. Appellee Kevin O'Neill's request for attorneys fees on appeal is DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 21 U.S.C. § 881(h) provides: "All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section."
 
 
 [2]
 28 C.F.R. § 0.111 provides, in pertinent part:
 The Director of the United States Marshals Service shall direct and supervise all activities of the United States Marshals Service including:
 (i) Maintenance of custody, management control, and disposal of property and money seized or forfeited pursuant to any law enforced or administered by the Department of Justice, when the property is seized by the United States Marshals Service or delivered to the United States Marshals Service in accordance with regulations; and administer the Department of Justice Asset Forfeiture Fund. [Emphasis added.]
 
 
 [3]
 FED.R.APP.P. 38 provides: "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."