USCA1 Opinion

 

 March 12, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1555 No. 92-1800 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. APPROXIMATELY TWO THOUSAND, FIVE HUNDRED THIRTY-EIGHT POINT EIGHTY-FIVE SHARES (2,538.85) OF STOCK CERTIFICATES OF THE PONCE LEONES BASEBALL CLUB, INC., ETC., Defendants, Appellees. __________ DOMINGO COTTO-GARCIA, Claimant, Appellant. ____________________ ERRATA SHEET The opinion of this court issued on March 5, 1993, is amended as follows: On page 17, line 5 of footnote 7, delete "be" between "might" and "not". March 5, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1555 No. 92-1800 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. APPROXIMATELY TWO THOUSAND, FIVE HUNDRED THIRTY-EIGHT POINT EIGHTY-FIVE SHARES (2,538.85) OF STOCK CERTIFICATES OF THE PONCE LEONES BASEBALL CLUB, INC., ETC., Defendants, Appellees. __________ DOMINGO COTTO-GARCIA, Claimant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Skinner,* Senior District Judge. _____________________ ____________________ Rafael F. Castro Lang with whom F. Castro Amy was on brief for ______________________ ______________ claimant-appellant. Jose F. Blanco, Assistant United States Attorney, with whom ________________ Daniel F. Lopez-Romo, United States Attorney, was on brief for the ____________________ United States. ____________________ March 5, 1993 ____________________ ____________________ *Of the District of Massachusetts, sitting by designation. CAMPBELL, Senior Circuit Judge. At issue in this _____________________ appeal is whether appellant Cotto-Garc a was tardy in filing his "claim" contesting the government's in rem seizure, under __ ___ drug laws, of his stock shares. Under relevant rules, infra, _____ appellant had "10 days after process has been executed" to file the required claim. He contends he filed the claim on time (in fact, prematurely), as process was executed, under his theory, only when notice of the government's forfeiture action was published an event that did not occur until _________ after Cotto-Garc a had filed his claim. The district court _____ rejected this argument. It ruled that "process [had] been executed" much earlier, at the time appellant was personally served with notice of the forfeiture action, causing appellant's later filing to fall outside the ten-day period. Like the district court, we reject Cotto-Garc a's theory that the date when notice was published is _________ determinative as to him. We agree with the court that the earlier notification to appellant by personal service constituted the relevant notice. But while service of personal notice upon the owner of the res (or other adequate ___ notification) was a necessary element of the execution of process in this proceeding in rem, it was not sufficient by __ ___ __________ itself to fulfill the triggering requirement in the rules that "process has been executed." "Process" in an in rem __ ___ -3- action consists fundamentally of the warrant for arrest of the property to be seized. "Execution" of such "process" consists of service of the arrest warrant upon the defendant property, after which the marshal files with the court proof of service. In the present case, we find in the record an issued arrest warrant, but we find no process return form or other proof showing that the arrest warrant was served upon appellant's shares of stock and when this occurred. Without a return or at least some showing that service occurred, it is impossible to say whether and when the arrest warrant was executed. Had the arrest warrant been properly served on the stock on or before January 3, 1992, the day when appellant personally was served, we would agree with the district court that the ten-day period commenced to run on the day of personal service, to wit, January 3. But if the arrest warrant had not by then been served, and was served either later or not at all, the mere giving of personal notice alone would not have constituted the "execution" of "process." And until process had been executed, the ten-day period did not begin to run. We accordingly vacate and remand, with directions to the district court to determine whether and when the warrant for arrest of the property was served upon appellant's stock shares, and, applying that information in light of the present opinion, to determine if "process [had] -4- been executed" as of January 3, 1992 when notice was served upon appellant. Until this is correctly ascertained, the timeliness of appellant's filing of claim cannot be determined. We turn now to a detailed discussion of this appeal. I. I. Appellant Domingo Cotto-Garc a was arrested and indicted in June 1991 for federal drug offenses. He pleaded guilty to these in October 1991. After his arrest, the United States government initiated civil forfeiture proceedings against all known properties of Cotto-Garc a. One of the forfeiture actions began on December 18, 1991, when the United States government filed a complaint pursuant to 21 U.S.C. 881(a)(6) and 18 U.S.C. 981 in the United States District Court for the District of Puerto Rico. The government sought forfeiture of approximately 2,538.85 shares of stock of the Ponce Leones Baseball Club, Inc. allegedly owned by Cotto-Garc a and purchased with proceeds of drug transactions. A motion for issuance of warrants was filed by the government on the same day. On December 31, 1991, the clerk of the court issued and delivered two warrants to the U.S. Attorney, pursuant to a magistrate's order of December 30. One of the warrants was a warrant for arrest in rem. It ordered the U.S. Marshal to __ ___ -5- seize the defendant (the 2,538.85 shares of stock) and to notify "the owner and/or possessor" to file a claim "ten (10) days after service, . . . [and] thereafter a responsive pleading to the Complaint filed within twenty (20) days following such claim or thirty (30) days after the service, whichever is less . . . ." The second warrant was one for "seizure and monition," ordering the marshal to publish a newspaper announcement to notify "all persons claiming the same" to file a claim "no later than ten (10) days after the last publication." On January 3, 1992, the alleged owner of the stocks, appellant Cotto-Garc a imprisoned at a state penitentiary at Rio Piedras, Puerto Rico was personally served by a marshal with copies of the complaint and of both warrants. On January 30, 1992, the government requested the court to enter default judgment against Cotto-Garc a (and the various other persons who had been personally served) because no claim for the property had been filed. The magistrate later denied this request for default. The next day, January 31, 1992, Cotto-Garc a filed a verified notice of claim, attesting that he was the owner of the property named in the complaint. The government moved to strike the notice of claim on February 4, 1992, on the grounds that it was filed late under Supplemental Rule C(6). A magistrate granted the motion to strike on February 12, -6- 1992.1 In the meantime, a copy of the warrant of seizure and monition was published on February 7 in El Nuevo D a, a _____________ newspaper in Puerto Rico; no one filed a claim after publication of the notice. Cotto-Garc a appealed from the magistrate's order striking his claim to the district court. The district court issued an opinion agreeing with the magistrate that Cotto- Garc a's claim had been filed out of time. Pursuant thereto, the court dismissed Cotto-Garc a's appeal from the magistrate and, finding no other claimants, ordered the property forfeited to the United States of America. Cotto-Garc a appeals from the final judgment. II. II. We now review the procedures that must be followed in civil forfeiture actions like this. This forfeiture action was brought by the United States pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. 881(a)(6), and the Money Laundering Act, 18 U.S.C. 981. 21 U.S.C. 881(a)(6) provides that, "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this ____________________ 1. Nevertheless, one week after the magistrate struck his claim, Cotto-Garc a requested an extension of time to answer the complaint. The government responded that Cotto-Garc a had no standing in the case since his claim had been stricken. The court took no action on this motion. -7- subchapter [and] all proceeds traceable to such an exchange" are subject to forfeiture to the United States. Similarly, 18 U.S.C. 981 subjects property related to money laundering to forfeiture. Both forfeiture statutes provide, with certain exceptions, that the property shall be seized upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property.2 21 U.S.C. 881(b); 18 U.S.C. 981(b)(2). Thus the Supplemental Rules govern the procedures for civil forfeiture actions. See Fed. R. Civ. P., Supp. R. A et seq. The ___ __ ____ Federal Rules for Civil Procedure also apply except to the extent that they are inconsistent with the Supplemental Rules. See Supp. R. A. ___ Supplemental Rule C contains special provisions for actions in rem, including civil forfeiture proceedings. The __ ___ action in rem is brought by the plaintiff (here, the United __ ___ States) against the defendant property which is allegedly ____________________ 2. "Alternatively, the government may commence a criminal forfeiture proceeding by requesting 'the issuance of a warrant authorizing the seizure of property subject to forfeiture under [section 881] in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure.' 21 U.S.C. 881(b) (Supp. 1990). Federal Rule of Criminal Procedure 41 governs the issuance of search warrants. See Fed. R. Crim. P. 41." United States v. One ___ ______________ ___ Parcel of Real Property, 921 F.2d 370, 373 n.4 (1st Cir. _________________________ 1990). -8- subject to forfeiture (here, the stock certificates). The government must file a verified complaint, in accordance with the requirements of Supplemental Rules C(2) and E(2)(a), with the clerk of the court and request issuance of a warrant for the arrest of the property. If upon reviewing the complaint and supporting papers the court finds that conditions for an action in rem __ ___ appear to exist, the court orders the clerk to issue a warrant for arrest of the property. Supp. R. C(3). The ________________ clerk delivers the warrant to the marshal or other authorized person, who serves the warrant for arrest of the property either by taking possession of the property or by other means pursuant to Supplemental Rule E(4). See Supp. R. C(3); Supp. ___ R. E(4). Rule E(4), which governs execution of the warrant for arrest of the property, provides, in part: (a) In General. Upon issuance and ____________ delivery of the process . . . the marshal or other person or organization having a warrant shall forthwith execute the ____________ process in accordance with this _______ subdivision (4), making due and prompt return. [Emphasis supplied.] Service, or execution, of process on tangible property is generally done by taking it into possession; service of the warrant on intangible property is generally accomplished by leaving a copy of the complaint and process with the garnishee or other obligor. See Supp. R. E(4)(b), (c); James ___ Wm. Moore & Alfred S. Palaez, 7A Moore's Federal Practice ________________________ -9- E.08 - E.09 (2d ed. 1988 & Supp. 1992-93).3 A process return and receipt form, or other proof of service indicating when the warrant was served upon the property, is filed with the court by the person serving process. See Supp. R. ___ E(4)(a); Fed. R. Civ. P. 4(g). In addition to service on the property, notice of the action in rem is given by personal __ ___ service of copies of the complaint and warrant upon persons known to have an interest in the property that is the subject of the action, and, in most cases, by publication in a local newspaper. See Supp. R. C(4).4 ___ Before a claimant in a forfeiture case can file an answer and defend on the merits, the claimant must file a claim pursuant to Rule C(6). United States v. One Urban Lot, _____________ _____________ 978 F.2d 776, 778 (1st Cir. 1992). If no claim is properly filed, a putative claimant lacks standing to contest forfeiture of the property. Id.; United States v. One Parcel ___ _____________ __________ of Real Property, 921 F.2d 370, 373 n.5 (1st Cir. 1990); _________________ ____________________ 3. While stock certificates probably are considered intangible for the purposes of Rule E(4), see 7A Moore's ___ _______ Federal Practice E.09, we leave that determination, and all ________________ related determinations, to the district court. 4. The Supplemental Rules do not expressly provide for the giving of notice to persons known to have an interest in the property, such as the owner or possessor of the property. See 7A Moore's Federal Practice C.14; David B. Smith, 1 ___ _________________________ Prosecution and Defense of Forfeiture Cases 9.03[1] (1992). ___________________________________________ However, such notice is constitutionally required. See ___ Mennonite Board of Missions v. Adams, 462 U.S. 791, 800 _____________________________ _____ (1983). Courts accordingly routinely order personal service to be made upon the owner or possessor of the property. -10- United States v. Parcels of Land, 903 F.2d 36, 38 (1st Cir. ______________ _______________ 1990). Rule C(6) of the Supplemental Rules establishes the time requirements for filing a claim. Id. at 777. ___ The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall file an answer within 20 days after the filing of the claim. . . . Supp. R. C(6). The crucial issue in this appeal is the meaning of the phrase in Rule C(6), "10 days after process has been executed." III. III. We dispose quickly of Cotto-Garc a's primary argument on appeal, namely, that his notice of claim was timely filed on January 31 because, in his view, the term "process has been executed" in Rule C(6) refers to the day the final published notice appeared (February 7), not the day he was personally served with notice (January 3). He looks to the warrant of seizure and monition for support, as that warrant (as distinguished from the separate warrant for arrest in rem) states that "all persons claiming the _______ [property] . . . be and appear before the said Court, at the City of San Juan no later than ten (10) days after the last publication." The government agrees with the district court that Cotto-Garc a's argument would be correct for any -11- claimant that had not earlier been personally served with copies of the warrants, but contends that Mr. Cotto was personally served with process on January 3, 1992. Therefore, the government urges, his ten days to file a notice of claim established by Rule C(6) had run out by the time he filed his claim on January 31, 1992. See Dist. Ct. ___ Order at 3. Cotto-Garc a's reading of Rule C(6) is perhaps not entirely inconceivable, see United States v. Various Parcels ___ _____________ _______________ of Real Property, 650 F. Supp. 62, 64 n.2 (N.D. Ind. 1986), ________________ given the confusion surrounding the requirements of Rule C. See United States v. $38,570 U.S. Currency, 950 F.2d 1108, ___ ______________ ______________________ 1114 (5th Cir. 1992); 7A Moore's Federal Practice C.16 at ________________________ 700.13-700.14. However, a deadline tied to the notice publication date would, for someone who had already received notice by personal service, make little sense. Personal service is virtually certain to alert the intended noticee. Notice by publication, on the other hand, is far less reliable, being a stop gap for persons whose identities and possible interests are unknown. Once alerted by personal service, an individual has nothing left to learn by awaiting publication of notice in the newspaper. All that would occur, were we to adopt appellant's position, would be to permit claimants who have been personally notified to unjustifiably delay filing their claims. See 7A Moore's ___ _______ -12- Federal Practice C.16 at 700.14 ("A claimant with actual ________________ knowledge, of course, should not [wait until after publication] lest he be deemed guilty of laches.") The purpose of the Rule C(6) time limit is "to force claimants to come forward as soon as possible after forfeiture proceedings have begun and to prevent false claims." United States v. _____________ One Urban Lot Located at 1 Street A-1, 885 F.2d 994, 1001 ________________________________________ (1st Cir. 1989); United States v. 1982 Yukon Delta Houseboat, _____________ __________________________ 774 F.2d 1432, 1436 (9th Cir. 1985). Furthermore, newspaper notice is not required in all cases, see Supp. R. C(4), and ___ "a claimant with actual notice of the arrest, especially if such notice was obtained by service upon him, cannot object to a failure to advertise." 7A Moore's Federal Practice _________________________ C.14 at 700.1; see also $38,570 U.S. Currency, 950 F.2d at ________ _____________________ 1115 n.8 (rejecting argument that process is not executed until the final day of publication of notice). For these reasons, we have little difficulty rejecting appellant's reading of Rule C(6). We add that the case law in this circuit is consistent with treating the date on which adequate notice was first given to a particular claimant, whether by personal _____ __________ service or publication, as the trigger of the Rule C(6) time period. See, e.g., United States v. One 1987 BMW 325, No. ___ ____ ______________ _________________ 92-1827, at 3, 1993 U.S. App. LEXIS 2505 (1st Cir. Feb. 18, 1993); One Urban Lot, 978 F.2d at 777; One Urban Lot Located _____________ _____________________ -13- at 1 Street A-1, 885 F.2d at 1001; United States v. One 1978 _______________ _____________ ________ BMW, 624 F. Supp. 491, 492 (D. Mass. 1985); see also United ___ _________ ______ States v. Estevez, 845 F.2d 1409, 1412 (7th Cir. 1988) ______ _______ (considering date that claimant received notice in mail to commence filing period under 21 U.S.C. 853(n)); United ______ States v. United States Currency Totalling $3,817.49, 826 ______ ____________________________________________ F.2d 785, 786 (8th Cir. 1987) (assuming that claim filed within ten days of notice, but five months after seizure, was timely); United States v. $38,000.00 in U.S. Currency, 816 ______________ ____________________________ F.2d 1538, 1545-46 (11th Cir. 1987) (refusing to apply Rule C(6) deadline to claim where government failed to properly notify claimant of action). We, therefore, agree with the district court that, in the case of an owner of property to whom notice is first given by personal service, the notice component of "process" is fully satisfied by the personal service. There is no justification whatever for waiting thereafter until notice by newspaper publication is made a form of notification clearly addressed only to those persons who have not earlier been identified and personally served. But a harder question lurks here. Appellant asserts, and the record seems to bear him out, that the warrant for arrest and seizure of the res, i.e., the stock ___ shares, was never served. Insofar as service of such process is also an essential part of the "execution" of "process" that triggers the running of the ten-day period under Rule -14- C(6), it may be that January 3, 1992, the date when appellant was personally served, did not trigger the running of the ten ___ days. Indeed, while personal service of notice on the owner (or alternative means of giving notice) seems an essential ingredient of execution of process in an in rem proceeding, __ ___ it is not the process specifically mentioned in the Admiralty ___ Rules. The text of the Rules quite clearly indicate that Rule C(6)'s reference to execution of process applies to the service of the warrant for arrest in rem on the res, here the __ ___ ___ stock shares. The description of the triggering date in Rule C(6) when "process has been executed" is the same phraseology found in Rule E(4) describing service of the in __ rem warrant. It seems clear, therefore, that the reference ___ to process execution in Rule C(6) comprehends service of a duly issued warrant of arrest on the defendant property. We hold, therefore, that the words "process has been executed" are satisfied under Rule C(6) only when (1) a properly issued warrant for arrest in rem has been properly __ ___ executed, i.e., served upon the res; and, (2) the requisite ___ notice has been given to potential claimants.5 If the first element has already been met, then the ten-day filing period begins to run as to a claimant who is personally served on ____________________ 5. As we have discussed and will discuss at greater length below, while the personal notice requirement is not expressly set out in the Admiralty Rules, we think it also must be regarded as an element of the "process" required by Rule C(6) to be "executed." -15- the date of personal service. For others, assuming again that the first element has been previously fulfilled, the ten-day period begins on the date of the final publication notice (if any is required by Rule C(4)). The first element that the warrant for arrest of the property be issued and executed before process is considered to have been executed arises, as we have already said, from Supplemental Rules C(3) and E(4), which define the procedures for execution of process. See supra ___ _____ Part II. Clearly "process" as used there means the warrant for arrest in rem, and that process is executed by service __ ___ upon the property subject to forfeiture. Supp. R. E(4); $38,570 U.S. Currency, 950 F.2d at 1113; United States _______________________ ______________ Currency Totalling $3,817.49, 826 F.2d at 786-87; $38,000.00 ____________________________ __________ in U.S. Currency, 816 F.2d at 1545-46; 7A Moore's Federal _________________ ________________ Practice E.08 at E-355-56. Serving a copy of a warrant on ________ the property owner is not the same as execution of the warrant. "Service must be made upon the res itself." ___ $38,570 U.S. Currency, 950 F.2d at 1113. We see no way to ______________________ escape from the conclusion that process has not been executed within the meaning of Rule C(6) unless the procedures for execution of process within Rules C(3) and E(4) have been met. These procedures do not expressly include personal service of a copy of the warrant upon the owner, and plainly are not met merely by such personal service. -16- This is not to say that notice to the owner is irrelevant to the Rule C(6) formulation. Claimants can hardly be expected to file a claim before they personally have notice of the pending action. While admiralty law traditionally presumed that service of the warrant on the property (e.g., by seizing the vessel or posting notice) was sufficient to give constructive notice of the action, that presumption is dubious in the circumstances of civil forfeiture proceedings such as the instant case. See 4 ___ Charles Alan Wright & Arthur R. Miller, Federal Practice and ____________________ Procedure 1074, at 462 (2d ed. 1987). Some courts, it is _________ true, have suggested that service of the warrant for arrest on the res itself suffices, in all forfeiture cases, to ___ constitute execution of process for purposes of the time limits in Rule C(6), regardless of when the claimant is __________ notified. See $38,570 U.S. Currency, 950 F.2d at 1113-14; ___ _____________________ see also United States Currency Totalling $3,817.49, 826 F.2d ________ __________________________________________ at 786-87 (rejecting argument that process is served through publication of the notice). That interpretation of the rule, however, raise both constitutional6 and practical problems7 ____________________ 6. Constitutional questions arise because this strict interpretation implicitly assumes that service of the warrant on the property either by seizing it or posting notice of the action, pursuant to Supplemental Rule E(4) provides adequate notice to potential claimants that a forfeiture action is pending. This presumption applied in admiralty law, where it was presumed "that the vessel owner, through a master, agent, or personal presence, will maintain reasonable contact with and continuing interest in the status and -17- when it is applied. For example, under this interpretation, a person might not receive notice (through personal service or publication) until seven days after the warrant has been ____________________ condition of the vessel." MacDougalls' Cape Cod Marine ______________________________ Serv., Inc. v. One Christina 40' Vessel, 900 F.2d 408, 412 ____________ _________________________ (1st Cir. 1990). While constitutional in some cases, this presumption is rebuttable; for example, this court has held in an admiralty action that posting notice on a vessel was insufficient to satisfy constitutional due process requirements where the owner was known to be out of the area. Id. ___ The Supreme Court has expressly held that, even in an action in rem, "[n]otice by mail or other means as certain to __ ___ ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well ___ versed in commercial practice, if its name and address are reasonably ascertainable." Mennonite Board of Missions v. ____________________________ Adams, 462 U.S. 791, 800 (1983) (emphasis in original). _____ 7. Practical problems arise because notice of the action in __ rem, whether by personal service or publication, is not ___ required to be given at any particular time, and, in practice, is usually given at least a few days after the seizure of the property. Notice might not be given until ten days or more after the property is seized. Therefore, under the Fifth Circuit's interpretation of Rule C(6), the deadline for filing claims could have passed by the time one receives notice of the action. $38,570 U.S. Currency, 950 F.2d at _____________________ 1114; United States v. One 1987 27 Foot Boston Whaler, No. _____________ ________________________________ 92-2992, 1992 U.S. Dist. LEXIS 19323, at *12-13 (D.N.J. Nov. 30, 1992). "Even if [a claimant] does receive notice in time to file a claim, he may have much less time than the ten days contemplated by Rule C(6)." David B. Smith, 1 Prosecution ___________ and Defense of Forfeiture Cases 9.03 at 9-42.14 (1992). In ________________________________ addition, the government is not required to tell claimants the date of the seizure, but only to put claimants "on notice ____ that execution of process on the res had recently occurred or ___ was imminent." $38,570 U.S. Currency, 950 F.2d at 1114. ______________________ Thus, even when one receives notice before the end of the ten-day period, claimants are left to their own devices to investigate the records at the courthouse to discover when their ten-day filing period began. Id. ___ -18- executed on the property, leaving only three days to file a claim. We believe that the drafters of Rule C(6) intended to give claimants ten days, not three, to file their claims, and that the rule should be interpreted to avoid constitutional questions. See Public Citizen v. United States Dept. of ___ ______________ ________________________ Justice, 491 U.S. 440, 465-66 (1989) ("It has long been an _______ axiom of statutory interpretation that 'where an otherwise acceptable construction of a statute would raise serious constitutional problems, the [courts should] construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.'") (quoting Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & ___________________________ _____________________________ Constr. Trades Council, 485 U.S. 568, 575 (1988)); see also _______________________ ________ Public Citizen, at 454-55 (stating that courts should avoid a ______________ reading of a statutory term which leads to "odd" or "absurd" results inconsistent with Congress' intention). For these reasons, we hold that the giving of adequate notice is an essential element of the "process" to be executed before the ten-day filing period of Rule C(6) begins. But while personal service of a copy of the arrest warrant (or other suitable notice) is, therefore, part and parcel of the Rule C(6) execution-of-process trigger, it is not coextensive therewith. Equally fundamental is service of the arrest -19- warrant upon the res, and this also must be fulfilled before ___ process can be deemed to have been executed.8 The district court order in this case does not make clear exactly how the court interpreted the phrase, "process has been executed." While it rejected appellant's argument that the publication date was relevant to claimants who received personal service, it did not consider whether or when the first element execution of the warrant for arrest in rem had been fulfilled. This, by itself, would not be __ ___ fatal if, as might normally be expected, it could reasonably be assumed that the arrest warrant had, in fact, been served on the res before or in conjunction with personal service ___ upon appellant. But such, unfortunately, was not the case, as we next discuss. IV. IV. The district court found that because Cotto-Garc a was personally served on January 3, 1992, his ten days to file a claim began then. The difficulty with this finding is that there is absolutely no indication in the district court record that as of January 3, 1992, the warrant for arrest of ____________________ 8. The situation can perhaps be analogized to serving a defendant in a personal action with a copy of a complaint that was never filed in court. While the service requirements of Fed. R. Civ. P. 4 may have been met, the failure to have instituted a viable lawsuit would render the notice meaningless. Here, the failure to serve the warrant on the res leaves the court without jurisdiction over the ___ "defendant" (i.e., the object in dispute), hence the giving of notice is a meaningless exercise. -20- the property had ever been executed upon the stock shares in issue. There is in the record no process receipt and return form or other proof of service executed by the marshal indicating service of the warrant upon the res. That is not ___ to say that the marshal's return would necessarily be the sole means to prove execution of process; other evidence might suffice. See Fed. R. Civ. P. 4(g); 4A Federal Practice ___ ________________ and Procedure 1130 at 344-48. But the date of process _____________ execution must be known in order to determine when the ten- day period commenced to run. And this problem is intensified, and not resolved, by the government's puzzling post-argument filing described in the note below.9 ____________________ 9. Two months after oral argument before this court, the government filed a motion setting forth its version of the date and circumstances of the alleged seizure of the stock certificates. The government asserted that the property was seized on December 17, 1991. This date is one day before the ______ forfeiture complaint was filed. While no warrant was attached to the motion, the motion was accompanied by an unauthenticated copy of a process receipt and return form, purportedly signed by a U.S. Marshal, indicating that one Wender Colon, Secretary of Ponce Leones Baseball Club, Inc., was personally served with a "seizure warrant" on December 18, 1991 at 9:30 a.m., and a copy of a stock certificate certifying that the United States of America owns 2,535.07 shares (not 2,538.85 shares) of the Ponce Leones Baseball Club as of December 18, 1991. These documents were apparently never filed or submitted to the district court; they are not listed on the district court's docket sheet. The only warrant in the record is the later, apparently unserved, warrant dated December 31, 1991, raising the question why, if the seizure had already been validly executed, a further warrant was secured. In any case, papers not filed with the district court or admitted into evidence by that court are not part of the record on appeal. See Fed. R. App. P. 10(a); Kirshner v. Uniden Corp. ___ ________ ____________ of America, 842 F.2d 1074, 1077 (9th Cir. 1988). Counsel's __________ -21- We recognize that appellant has waited until appeal to object to the adequacy of the process used for the seizure. Only in extraordinary circumstances will we remand for further findings on an issue not timely raised below. See ___ Germany v. Vance, 868 F.2d 9, 11 n.1 (1st Cir. 1989); United _______ _____ ______ States v. Krynicki, 689 F.2d 280, 291-92 (1st Cir. 1982). ______ ________ But we find this to be such an extraordinary case. On this record, it is impossible reliably to determine whether the district court correctly applied Rule C(6), whether appellant's claim was in fact filed late, and whether the government itself complied with the procedural requirements of the Supplemental Rules. Because "forfeiture is a harsh medium," courts generally favor disposing of forfeiture cases on their merits. One 1987 BMW 325, No. 92-1827 at 7. __________________ Moreover, without an effective seizure of the property the court may lack jurisdiction to forfeit the property to the government. See $38,570 U.S. Currency, 950 F.2d at 1113 ("No ___ _____________________ in rem suit can be maintained without a valid arrest of the ______ res by the marshal."); Alyeska Pipeline Serv. Co. v. Vessel ___ __________________________ ______ ____________________ representation that the seizure occurred on December 17 (contradicting the December 18 process receipt) is not an adequate substitute for a record showing. Goldstein v. _________ Kelleher, 728 F.2d 32, 37 (1st Cir.), cert. denied, 469 U.S. ________ ____________ 852 (1984); Fisher v. Flynn, 598 F.2d 663, 666 n.5 (1st Cir. ______ _____ 1979). We disregard the proffered documents and deny the motion without prejudice to the government's right to submit and explain this evidence to the district court on remand. -22- Bay Ridge, 703 F.2d 381, 384 (9th Cir. 1983) (same), cert. __________ _____ dismissed, 467 U.S. 1247 (1984). But cf. United States v. _________ _______ _____________ TWP 17 R 4, Certain Real Property in Maine, 970 F.2d 984, 989 __________________________________________ (1st Cir. 1992) (suggesting that posting of arrest warrant on real estate, though insufficient to constitute a "seizure," is adequate to confer jurisdiction over property in an in rem __ ___ action); Trans-Asiatic Oil, Ltd., S.A. v. Apex Oil Co., 804 _____________________________ ____________ F.2d 773, 778-79 (1st Cir. 1986) (discussing differences between jurisdictional requirements for Rule B attachments and Rule C actions in rem). In any event, this is a case __ ___ where the government seeks to benefit by a strict application of the Rules, alleging appellant to have failed to meet the ten-day deadline by a relatively few days. Given that the government may itself have failed to comply strictly with the same Rules, we think it fair that the correct facts be ascertained. See United States v. Borromeo, 945 F.2d 750, ___ _____________ ________ 753 (4th Cir. 1991); $38,000.00 In U.S. Currency, 816 F.2d at ___________________________ 1547. Faced with a record suggesting a real possibility that the government never effected valid service upon the res ___ prior to January 3, 1992, we remand to the district court for it to determine when the warrant for arrest of the property was executed and, accordingly, whether Cotto-Garc a's claim was indeed filed late. If the court finds that a proper arrest warrant was, in fact, executed on the property on or -23- before January 3, 1992, then the court should find that the Rule C(6) ten-day period began on January 3, the date that Cotto-Garc a was personally served. If, however, the court finds that the warrant was not executed until later, whether the claim was late depends on the date of that execution, which becomes the triggering date under Rule C(6). If, for some reason, the warrant was never served on the property, _____ then Cotto-Garc a's claim was not late because process had yet to be executed by the time he filed his claim. V. V. In conclusion, because the record is insufficient to determine the timeliness of Cotto-Garc a's claim, we vacate both the affirmance of the magistrate's ruling to strike the notice of claim by Cotto-Garc a and the forfeiture order, and we remand to the district court with directions to reopen the record and redetermine, in light of this opinion, whether Cotto-Garc a's notice of claim was in fact untimely under Rule C(6). Because we vacate on other grounds, we do not reach Cotto-Garc a's argument that the district court should have exercised its discretion to extend the time for filing his claim. Granting a discretionary extension is an option that we leave open to the district court on remand should it conclude that, although the claim was untimely, there were sufficient factors justifying an extension. -24- Vacated and remanded for further proceedings. ___________________________________________________ Costs for appellant. ___________________ -25-